The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNARD WAITHAKA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON LOGISTICS, INC.,<br><br>Defendants. | **ORAL ARGUMENT REQUESTED**<br><br>Case No. 2:19-cv-01320-RSM<br><br>DEFENDANTS' MOTION TO EXTEND STAY<br><br>**NOTE ON MOTION CALENDAR: October 9, 2020** |

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

I.      INTRODUCTION ................................................................................... 1

II.     ARGUMENT ......................................................................................... 3

    A.    Defendants Are Likely To Succeed In Seeking Review. ................... 4

        1.    A Circuit Split on the Question Presented Shows a "Substantial Case on the Merits." ............................................................. 5

        2.    A Circuit Decision that Conflicts with Supreme Court Precedent Also Shows a "Substantial Case on the Merits." ................... 7

    B.    Defendants Will Be Irreparably Harmed Without A Stay .................... 9

    C.    A Stay Will Not Substantially Harm Plaintiffs. .............................. 11

    D.    Strong Federal Policy Favors A Stay. ......................................... 12

III.    CONCLUSION ..................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................ 14

MOTION TO EXTEND STAY - i
Case No. 2:19-cv-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asplundh Tree Expert Co. v. Bates*,
   71 F.3d 592 (6th Cir. 1995) ............................................................................ 1, 6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................ 10

*Benson v. Double Down Interactive, LLC*,
   No. 2:18-cv-00525-RBL, 2019 WL 972482 (W.D. Wash. Feb. 28, 2019) ...................... 12

*Cardenas v. AmeriCredit Fin. Servs. Inc.*,
   No. C 09-04978, 2011 WL 846070 (N.D. Cal. Mar. 8, 2011) ........................... 11

*Cherny v. AT&T, Inc.*,
   No. CV 09-3625, 2010 WL 2572929 (C.D. Cal. Feb. 8, 2010) ........................... 3

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ............................................................................................ 8

*Clinton v. Jones*,
   520 U.S. 681 (1997) ............................................................................................ 3

*Del Rio v. Creditanswers, LLC*,
   No. 10-CV-346 WQH (BLM), 2010 WL 3418430 (S.D. Cal. Aug. 26, 2010) ................. 10

*Eastus v. ISS Facility Servs., Inc.*,
   960 F.3d 207 (5th Cir. 2020) ........................................................................ 1, 6, 9

*Eberle v. Smith*,
   No. 07-CV-0120 W WMC, 2008 WL 238450 (S.D. Cal. Jan. 29, 2008) ........................ 11

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ..................................................................................... 5, 12

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   140 S. Ct 1637 (2020) ......................................................................................... 5

*Gray v. Golden Gate Nat'l Recreational Area*,
   No. C 08-00722 EDL, 2011 WL 933 (N.D. Cal. Dec. 29, 2011) ....................................... 12

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ........................................................................................... 5

*Hill v. Rent-A-Center, Inc.*,
   398 F.3d 1286 (11th Cir. 2005) ...................................................................... 1, 6

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ........................................................................................ 3, 4

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010) .................................................................................. *passim*

*In re Grice*,
   — F.3d —, 2020 WL 5268941 (9th Cir. Sept. 4, 2020)............................. 1, 7, 8

*In re Wirecomm Wireless, Inc.*,
   No. 2:07-CV-02451, 2008 WL 3056491 (E.D. Cal. Aug. 1, 2008) .................... 3

*Kwan v. Clearwire Corp.*,
   No. C09-1392JLR, 2011 WL 1213176 (W.D. Wash. Apr. 24, 2012)................. 4

*Lair v. Bullock*,
   697 F.3d 1200 (9th Cir. 2012) ....................................................................... 4, 5

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ....................................................................................... 5

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ........................................................................................... 3

*Lee v. Postmates*,
   No. 18-cv-03421-JCS, 2019 WL 1864442 (N.D. Cal. Apr. 25, 2019)................ 9

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ......................................................................... 3, 4

*Levya v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ............................................................................. 3

*Lightfoot v. Cendant Mortg. Corp.*,
   137 S. Ct. 553 (2017) ......................................................................................... 8

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005)............................................................................ 3

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*McDermott Int'l, Inc. v. Wilander*,
   498 U.S. 337 (1991) .................................................................................................. 9

*New Prime Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) ............................................................................................... 5

*NGV Gaming, Ltd. v. Harrah's Operating Co.*,
   No. 04-3955 SC, 2008 WL 4951587 (N.D. Cal. Nov. 18, 2008)........................................ 4

*O'Brien v. O'Laughlin*,
   557 U.S. 1301 (2009) ............................................................................................... 4

*Ontiveros v. Zamora*,
   No. CIV. S-08-567, 2013 WL 1785891 (E.D. Cal. Apr. 25, 2013) .................................. 11

*Partsfleet v. Hamrick*,
   No. 19-13339 (11th Cir.) .......................................................................................... 7

*Rittmann v. Amazon.com Inc.*,
   — F.3d —, 2020 WL 4814142 (9th Cir. Aug. 19, 2020)...........................................*passim*

*Singh v. Uber Techs. Inc.*,
   939 F.3d 210 (3d Cir. 2019) .................................................................................. 1, 7

*Smith v. Legal Helpers Debt Resolution, LLC*,
   No. 11-5054RJB, 2012 WL 12863172 (W.D. Wash. Apr. 24, 2012) ............................... 10

*Steiner v. Apple Computer, Inc.*,
   No. C 07-04486, 2008 WL 1925197 (N.D. Cal. Apr. 29, 2008)........................................ 9

*Waithaka v. Amazon.com, Inc.*,
   966 F.3d 10 (1st Cir. 2020) ....................................................................................*passim*

*Wallace v. Grubhub Holdings, Inc.*,
   — F.3d —, 2020 WL 4463062 (7th Cir. Aug. 4, 2020)............................................. 1, 6, 8

*Wilson v. Huuuge, Inc.*,
   No. 3:18-cv-05275-RBL, 2019 WL 998319 (W.D. Wash. Mar. 1, 2019) .................... 4, 10

*Zaborowski v. MHN Gov't Servs., Inc.*,
   No. C 12-05109 SI, 2013 WL 1832638 (N.D. Cal. May 1, 2013) .................................. 12

**Rules**

Sup. Ct. R. 10 ..................................................................................................... 5, 7

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**Statutes**

9 U.S.C. § 1 ............................................................................................. *passim*

9 U.S.C. § 16 ......................................................................................... 12

45 U.S.C. §§ 51-60 (Federal Employers' Liability Act) ........................................ 8, 9

MOTION TO EXTEND STAY - v
Case No. 2:19-cv-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.    INTRODUCTION

Defendants respectfully request that this Court extend the stay of this case while Defendants seek further review of both the decision here by the United States Court of Appeals for the First Circuit and a related Ninth Circuit ruling, *Rittmann v. Amazon.com Inc.*, — F.3d —, 2020 WL 4814142 (9th Cir. Aug. 19, 2020) (petition for rehearing pending).[1]

This Court previously granted an agreed-upon stay of proceedings pending resolution of the appeal.  On September 1, 2020, the First Circuit denied Defendants' Rehearing Petition, leaving in place the panel decision affirming denial of arbitration.  *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020).  The panel so held based on a belief that Plaintiff Bernard Waithaka falls within the Federal Arbitration Act's exemption, 9 U.S.C. § 1, because, the panel concluded, he belongs to a class of workers that "transport goods or people within the flow of interstate commerce."  *Waithaka*, 966 F.3d at 13.

While a split panel in *Rittmann* recently adopted the First Circuit's holding (over a lengthy dissent), that decision is "in tension" with another case just decided in the Ninth Circuit—*In re Grice*, — F.3d —, 2020 WL 5268941, at *3-5 (9th Cir. Sept. 4, 2020)—and at odds with multiple other circuits—*Wallace v. Grubhub Holdings, Inc.*, — F.3d —, 2020 WL 4463062 (7th Cir. Aug. 4, 2020); *Eastus v. ISS Facility Servs., Inc.*, 960 F.3d 207 (5th Cir. 2020); *Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir. 2019); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286 (11th Cir. 2005); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995).  Given the conflict in the circuit courts, there is a greater than usual likelihood that the Supreme Court will grant certiorari and provide definitive guidance on the interpretation of § 1 of the FAA.  In the interim, Defendants ask this Court to continue the stay until the Supreme Court and en banc Ninth Circuit have an opportunity to determine whether to resolve these conflicts.

---

[1] The District of Massachusetts—where this case was filed—denied Amazon's Motion to Compel Arbitration and then transferred the case to this Court.  The appeal on the denial of that Motion, however, continued in the First Circuit before being remanded here.

MOTION TO EXTEND STAY - 1
Case No. 2:19-cv-01320-RSM

Courts routinely grant stays pending appeal of orders denying arbitration, especially where—as here—class litigation could result. This Court should do likewise. Failure to extend the stay for a relatively short time frame would result in Defendants losing the well-recognized benefits of arbitration even if the Supreme Court takes up the question presented and resolves it in Defendants' favor. Continued litigation under these circumstances would force Defendants to litigate claims on a class and collective basis, even though they bargained to resolve the claims of Plaintiff (and those similarly situated) through individual arbitration. *Waithaka*, 966 F.3d at 26. As shown by the factors to which this Court looks, a stay is warranted.

*First*, there is a "likelihood of success" (or "substantial case on the merits") in petitioning for further review. The test for determining the scope of the FAA's exemption is a substantial legal question that divides the circuits. Additionally, Defendants submit that the First and Ninth Circuits' decisions are on the wrong side of this significant federal issue, producing a result that conflicts with both the statute and Supreme Court precedent. These factors all significantly increase the likelihood that the Supreme Court or en banc Ninth Circuit will grant review and reverse. This satisfies the first stay factor.

*Second*, Defendants will suffer irreparable harm if litigation continues but Defendants' view ultimately prevails. In that scenario, Defendants will have forever lost the ability to realize the cost-reducing benefits of individual arbitration—a risk exacerbated by the class context here. As courts routinely recognize, this irreparable harm satisfies the standard for a stay.

*Third*, a continued stay will not harm Plaintiff. This case has been stayed during the pendency of the First Circuit appeal—at the request of both parties—and a modest delay to see whether the Supreme Court will review this case does not harm Plaintiff.

*Fourth*, given the liberal federal policy favoring arbitration, a stay furthers serves the public interest by preserving that right here until the issue is ultimately determined.

MOTION TO EXTEND STAY - 2
Case No. 2:19-cv-01320-RSM

1       For these reasons, the Court should grant Defendants' motion to extend the stay pending

2  resolution of Defendants' petitions for further review in this case and in *Rittmann*.

## II.   ARGUMENT

4       This Court "has broad discretion to stay proceedings as an incident to its power to

5  control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N.*

6  *Am. Co.*, 299 U.S. 248, 254 (1936)); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir.

7  2005). "A trial court may . . . find it efficient for its own docket and the fairest course for the

8  parties to enter a stay of an action before it, pending resolution of independent proceedings

9  which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64

10  (9th Cir. 1979). "[T]he power to stay proceedings is incidental to the power inherent in every

11  court to control the disposition of the causes on its docket with economy of time and effort for

12  itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.

13       In considering whether to stay litigation, courts apply the familiar four-factor

14  balancing test assessing: (1) the movant's likelihood of success in seeking review; (2) whether

15  the movant will be irreparably harmed without a stay; (3) whether a stay will "substantially

16  injure" the nonmovant; and (4) whether the public interest favors a stay. *Hilton v. Braunskill*,

17  481 U.S. 770, 776 (1987). The factors are considered on a sliding scale—"a stronger showing

18  of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d

19  962, 964 (9th Cir. 2011) (internal quotation marks and citation omitted). For example, the

20  "likelihood of success" requirement is "relaxed" if the other three factors weigh in favor of a

21  stay. *In re Wirecomm Wireless, Inc.*, No. 2:07-CV-02451, 2008 WL 3056491, at * 2 (E.D.

22  Cal. Aug. 1, 2008). Additionally, "courts within the Ninth Circuit have taken a more relaxed

23  approach" when the underlying order being challenged concerns arbitrability. *Cherny v.*

24  *AT&T, Inc.*, No. CV 09-3625, 2010 WL 2572929, at * 1 (C.D. Cal. Feb. 8, 2010) (granting

25

26

MOTION TO EXTEND STAY - 3
Case No. 2:19-cv-01320-RSM

1   stay pending the outcome of a related cert petition).[2]

2          Because of the importance of protecting potential arbitration rights on appeal, courts in

3   this district consistently grant motions to stay pending review of orders declining to compel

4   arbitration.  *See, e.g.*, *Wilson v. Huuuge, Inc.*, No. 3:18-cv-05275-RBL, 2019 WL 998319

5   (W.D. Wash. Mar. 1, 2019);  *see also Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2011 WL

6   1213176 (W.D. Wash. Apr. 24, 2012) ("The burdens associated with discovery in a putative

7   class action are substantially greater than in an individual arbitration.").  This case is no

8   different.  The relevant factors demonstrate that the Court should extend the stay pending

9   appeal in this case during the timeframe for Supreme Court review.  *See, e.g.*, *NGV Gaming,*

10  *Ltd. v. Harrah's Operating Co.*, No. 04-3955 SC, 2008 WL 4951587, at *1 (N.D. Cal. Nov.

11  18, 2008) (granting stay pending cert petition in light of circuit split).

12          **A.      Defendants Are Likely To Succeed In Seeking Review.**

13          While the first prong of the stay analysis is referred to as "likelihood of success," the

14  movant is "not require[d] . . . to show that it is more likely than not that [it] will win on the

15  merits."  *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (internal quotation marks and

16  citation omitted).  Rather, the party seeking a stay need only demonstrate "a substantial case for

17  relief on the merits."   *Id.* (noting other acceptable formulations include a "reasonable

18  probability" of success, having a "substantial case on the merits," and whether the case raises

19  "serious legal questions").  This case provides multiple reasons for review, and thus satisfies

20  the first prong of the stay analysis.  *See Leiva-Perez*, 640 F.3d at 966-67.

21

22  _____

23  [2] For a stay pending a cert petition, the Supreme Court has described the factors as: "(1) a
    reasonable probability that four Justices will consider the issue sufficiently meritorious to grant

24  certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment
    below; and (3) a likelihood that irreparable harm will result from the denial of a stay."

25  *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).  These are similar to traditional stay factors
    from *Hilton* that Justice Breyer reiterated in *O'Brien v. O'Laughlin*, 557 U.S. 1301, 1302 (2009)

26  (Breyer, J., in chambers).  *Hollingsworth* merely explains what a "substantial case on the
    merits" looks like at the petition-for-certiorari stage.

MOTION TO EXTEND STAY - 4
Case No. 2:19-cv-01320-RSM

### 1.   A Circuit Split on the Question Presented Shows a "Substantial Case on the Merits."

A substantial case on the merits is first established by the fact that the First Circuit's decision meets the primary characteristic to which the Supreme Court will look in considering whether to grant a cert petition: a circuit split on an important question of federal law.  *See* Sup. Ct. R. 10(a).  Here, circuit courts have staked out multiple positions on the meaning of § 1 of the FAA (exempting from arbitration "contracts of employment" for "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce").  Without question, this constitutes a "serious legal question[]."  *See Lair*, 697 F.3d at 1204 (noting "points of tension" between opinions).  As the Supreme Court has explained in deciding whether it should grant a stay pending resolution of a certiorari petition, the circuit split provides "a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari."  *Hollingsworth*, 558 U.S. at 190.[3]

On one side are the First and Ninth Circuits—reading the arbitration exemption at issue broadly to encompass even workers involved only in the localized intrastate transportation of goods or passengers (so long as interstate transportation *by other workers* is involved at some point).  Here, the First Circuit held that "transportation workers who transport goods or people *within the flow* of interstate commerce" are exempt from the FAA, regardless of the point at which those workers transported the goods or passengers.  *Waithaka*, 966 F.3d at 13 (emphasis added).  Similarly, one Ninth Circuit panel recently held that, regardless of whether the class of workers "cross[es] state lines," the exemption applies whenever the transported goods

---

[3] The "seriousness" of FAA questions is underscored by the frequency with which the Supreme Court addresses it.  *See, e.g.*, *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct 1637 (2020); *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).  Moreover, the Court implicitly recognized in *New Prime* that the "interstate" element of § 1 was an open question.  139 S. Ct. at 539 ("Happily, everyone before us agrees that Mr. Oliveira qualifies as a 'worker[] engaged in . . . interstate commerce.'" (alterations in original)).

MOTION TO EXTEND STAY - 5
Case No. 2:19-cv-01320-RSM

themselves have traveled "across state lines"—those goods "remain in the stream of interstate commerce until they are delivered" to their ultimate destination. *Rittmann*, 2020 WL 4814142, at *6.  It is enough that the worker is "employed to deliver goods that originate out-of-state to an in-state destination." *Id.* at *4.  Thus Amazon Flex drivers making local deliveries were held exempt because their deliveries are "part of a continuous interstate transportation." *Id.* at *8.

On the other side are the Third, Fifth, Sixth, Seventh, and Eleventh Circuits—requiring (at least) that employees transport goods or persons across state lines in order to be "engaged in . . . interstate commerce" and qualify for the exemption.  For example, the Seventh Circuit holds that workers are not exempt under § 1 simply because they "carry goods that have moved across state and even national lines." *Wallace*, 2020 WL 4463062, at *3.  Instead, "to fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders"—thus the exemption turns on whether "the interstate movement of goods is a central part of the job description of the class of workers" at issue. *Id.*  Likewise, the Fifth Circuit recently reaffirmed that the exemption turns on the actions of the workers, not the business for which they provide services, and thus a worker not "engaged in an aircraft's actual movement in interstate commerce" did not fall within the exemption even though the worker contributed to an airline's interstate transportation of goods and passengers. *Eastus*, 960 F.3d at 212.  This aligns closely with the Sixth Circuit's direction that an exempt transportation worker must be "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Bates*, 71 F.3d at 600-01.

Similarly, the Eleventh Circuit holds that engaging in interstate transportation is necessary—but not sufficient—for applying the exemption. *Hill*, 398 F.3d at 1290.  That contrasts with the First Circuit's opinion here squarely holding that interstate transportation is not necessary at all. *Waithaka*, 966 F.3d at 26.  Finally, the Third Circuit recently remanded a case for a determination of whether Uber drivers—who admittedly transport passengers across

MOTION TO EXTEND STAY - 6
Case No. 2:19-cv-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

state lines and passengers continuing the last leg of a journey that began out of state—fall within a class of workers engaged in interstate commerce as defined by the statute. *Singh*, 939 F.3d at 226; *id.* at 232 (Porter, J., concurring in part and in the judgment). Such a remand would be inappropriate, of course, under the First Circuit's treatment of the transportation of goods (or passengers) that have previously moved between states at some prior point in their journey.

The circuit conflict is underscored by both the dissent in *Rittmann* and the Ninth Circuit's recent *Grice* opinion. In *Rittmann*, Judge Bress pointed out the panel majority's conflict with both *Wallace* and *Singh*. *Rittmann*, 2020 WL 4814142, at *24 n.3 (Bress, J., dissenting). He noted that *Wallace*'s reasoning "is plainly inconsistent with both the majority here and *Waithaka*." *Id.* And he observed that *Singh* "appears to have recognized that . . . the analysis under § 1 turns on the extent to which the class of workers crosses state lines in the course of their deliveries." *Id.* at *25. Likewise, while the *Grice* panel attempted to reconcile its conclusion with *Waithaka* and *Rittmann*, it did not apply the flow-of-commerce standard and instead embraced *Wallace*'s focus on worker actions rather than where goods originated. *Grice*, 2020 WL 5268941, at *5. The panel also admitted that the district court ruling it upheld was "in tension" with *Waithaka* and *Rittmann*. *Id.* at *3-5. Such tension may be resolved in Defendants' favor by the en banc Ninth Circuit or Supreme Court. Either way, a substantial case on the merits exists because of the strong possibility of further review.[4]

### 2.    A Circuit Decision that Conflicts with Supreme Court Precedent Also Shows a "Substantial Case on the Merits."

An additional factor warranting discretionary review—and thus justifying the existence of a substantial case here—is inconsistency with prior Supreme Court precedent on an important question of federal law. Sup. Ct. R. 10(c). Not only does this increase the likelihood of certiorari being granted, it also satisfies the second criteria of the *Hollingsworth* test: "a fair

---

[4] The Eleventh Circuit also heard oral argument in June in a case that involves interpretation of the transportation worker exemption. *Partsfleet v. Hamrick*, No. 19-13339 (11th Cir.).

MOTION TO EXTEND STAY - 7
Case No. 2:19-cv-01320-RSM

1    prospect that a majority of the Court will vote to reverse the judgment below." 558 U.S. at 190.

2        To begin, the First and Ninth Circuits' decisions conflict with the Court's direction in

3    *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).  Though *Circuit City* focused on

4    whether the § 1 exemption applied *only* to transportation workers (as opposed to all workers),

5    the Court provided guidance on the proper interpretation of the "residual clause" that is

6    applicable here.  "[T]he residual clause should be read to give effect to the terms 'seamen' and

7    'railroad employees,' and should itself be controlled and defined by reference to the enumerated

8    categories of workers which are recited just before it . . . ."  *Id.* at 115.

9        But the First Circuit, like the Ninth in *Rittmann* (<u>but not in *Grice*</u>), focused on whether

10   there are "transport[ed] goods or people *within* the flow of interstate commerce."  *Waithaka*,

11   966 F.3d at 13 (emphasis added); *see Rittmann*, 2020 WL 4814142, at *7 (holding that,

12   regardless of whether workers "cross state lines," the exemption applies when transported

13   goods have traveled "across state lines" and goods "remain in the stream of commerce until

14   they are delivered").  Such an analysis looks to the status of the thing transported.  By contrast,

15   the Supreme Court holds that a correct interpretation of the residual clause "should itself be

16   controlled" by comparing the *class of workers* to seamen or railroad workers moving goods in

17   interstate commerce.  *Circuit City*, 532 U.S. at 115.  A correct reading of § 1 is thus "about

18   what the worker does," not "where the goods have been."  *Wallace*, 2020 WL 4463062, at *3.

19       Additionally, the panel—in another error repeated by the Ninth Circuit—reached the

20   wrong conclusion by improperly relying on language in the Federal Employers' Liability Act

21   (FELA), a statute created to give injured railroad workers a federal remedy.  45 U.S.C. §§ 51-

22   60.  The Supreme Court has said that a prior construction of statutory language from one statute

23   can displace the ordinary meaning of the words in another statute if (1) courts have settled the

24   meaning of an existing provision; and (2) if the new provision mirrors the existing statutory

25   text.  *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 563 (2017).  But the panel here violated

26

MOTION TO EXTEND STAY - 8
Case No. 2:19-cv-01320-RSM

the Supreme Court's teaching by equating FELA with the FAA even though FELA caselaw is far from settled and the statutory language of the FAA does not mirror FELA. *See Rittmann*, at *55 (Bress, J., dissenting) ("It is therefore hard to understand the First Circuit's conclusion, on which the majority relies, that the language of FELA and the FAA are 'nearly identical.'" (citing *Waithaka*, 2020 WL 4034997, at *6)).

The First Circuit's interpretation also conflicts with the Supreme Court's refusal to treat longshoremen who unload the goods that have moved in interstate commerce as covered by the FAA's exemption. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 348 (1991) (holding that "seamen do not include land-based workers"). It would be nonsensical for the exemption to cover local delivery drivers handling interstate goods *after* a non-exempt longshoreman unloaded and moved the goods from the interstate vessel at a warehouse. *See also Eastus*, 960 F.3d at 211-12 (recognizing that longshoremen are not covered by the FAA). The First and Ninth Circuits' inconsistencies with Supreme Court precedent make them prime candidates for review, thus confirming the "substantial case on the merits" in this situation.

*          *          *

As the court in *Lee v. Postmates* noted, the Supreme Court has not "squarely addressed the scope of [the transportation worker] exception as applied to intrastate delivery workers, and decisions from other circuits and district courts considering the exception have set forth a variety of different rules and factors for resolving such issues." 2019 WL 1864442, at *3 (N.D. Cal. Apr. 25, 2019). That is even truer today, thus presenting a substantial case on the merits.

## B.   Defendants Will Be Irreparably Harmed Without A Stay.

District courts throughout the Ninth Circuit recognize that the irreparable harm factor "will generally be satisfied in the special context of [a] denied motion to compel arbitration." *Steiner v. Apple Computer, Inc.*, No. C 07-04486, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008). In the unique circumstance of a request to stay pending review of an arbitrability

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

determination, the costs of continuing to litigate the dispute—monetary or otherwise—are considered "irreparable" harm. *See, e.g.*, *Wilson*, 2019 WL 998319, at *4 (finding "irreparable harm because of the risk of arbitration becoming moot and the possibility of having to litigate a class action"). Indeed, other courts in this District have observed that the irreparable harm factor "*strongly* favors as stay" in the context of a denial of a motion to compel arbitration, particularly "where Defendants are facing the expense of a possible class action." *Smith v. Legal Helpers Debt Resolution, LLC*, No. 11-5054RJB, 2012 WL 12863172, at *2 (W.D. Wash. Apr. 24, 2012) (citation omitted) (emphasis added). Not only is "[t]he difference in litigation expenses between a two-party case and a class action . . . substantial," "arbitration offers speed and economy that may be lost forever if defendant is required to engage in formal discovery prior to the resolution of its appeal." *Del Rio v. Creditanswers, LLC*, No. 10-CV-346 WQH (BLM), 2010 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010). As the Supreme Court has repeatedly stressed, individual arbitration offers several benefits over class litigation, including "lower costs." *E.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011). Such benefits are irretrievably lost if a party whose arbitration motion has been incorrectly denied must incur the expense of class-wide litigation pending review.

The risk of irreparable harm is present here. While the proceedings were previously stayed at the request of the parties, the First Circuit's decision opens the door for Plaintiff to seek class certification in hopes of notifying tens of thousands of individuals who may have no right to opt in to the action. Further, Plaintiffs already have attempted to serve wide-ranging discovery requests in the wake of the First Circuit's decision. But if the holding here is reversed, Defendants will have incurred expenses opposing class certification and engaging in discovery for naught—costs that will dramatically increase if any class is certified before the case is finally resolved. Without a stay during the pendency of further review, Defendants have no chance of avoiding those costs that they bargained to avoid in the first place. Defendants thus meet the

MOTION TO EXTEND STAY - 10
Case No. 2:19-cv-01320-RSM

second factor for a stay.  This also satisfies the final *Hollingsworth* factor: "a likelihood that irreparable harm will result from the denial of a stay."  558 U.S. at 190.

### C.   A Stay Will Not Substantially Harm Plaintiffs.

Defendants' risk of irreparable harm here outweighs any inconvenience of further staying the case for a relatively short amount of time.  *See, e.g.*, *Eberle v. Smith*, No. 07-CV-0120 W WMC, 2008 WL 238450, at *3 (S.D. Cal. Jan. 29, 2008) ("When a defendant appeals an order refusing to compel arbitration, the general disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the potential injury to defendant from proceeding in district court during pendency of appeal.").  Here, the delay would be approximately six to eight months, and mere delay does not evidence substantial harm without a demonstration of prejudice such as "undue loss or destruction of evidence" as a result of the delay.  *Ontiveros v. Zamora*, No. CIV. S-08-567, 2013 WL 1785891, at *2 (E.D. Cal. Apr. 25, 2013).  This could take place by "citing particular witnesses or documents that may be adversely affected by a stay."  *Eberle*, 2008 WL 238450, at *3.  Absent such a showing, a short delay does not rise to the level of substantial harm.  *See, e.g.*, *Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C 09-04978, 2011 WL 846070, at *4 (N.D. Cal. Mar. 8, 2011) (holding that an "unsubstantiated" argument that a delay will result in harm is insufficient to militate against a stay).

A delay will not work any harm to the Plaintiff.  In fact, as noted above, the parties previously requested a joint stay in the interests of judicial economy and preserving party resources.  Dkt. 73 at 2.  Those concerns are still present and extending the stay will ensure the most efficient use of time and resources for both the parties and this Court.  Defendants' petition for certiorari in this case is due no later than January 29, 2021, and Defendants estimate that the petition will either be granted or denied within six to eight months from now; the *Rittmann* petition for rehearing should also be resolved soon.  In all events, the extension of a stay here will be insignificant compared to the lifespan of an action that even in most circumstances

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

would realistically be measured in years, not months—an estimate that is all the more true during a global pandemic.  Because the relatively short delay—with a strong basis for review—will not injure Plaintiff, the third stay factor is also met.

### D.       Strong Federal Policy Favors A Stay.

Finally, the public interest is advanced by a stay in this case.  A strong federal policy favors arbitration.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  Among the primary benefits animating this policy is "the promise of quicker, more informal, and often cheaper resolutions for everyone involved."  *Id.*  That is why Congress, recognizing that these benefits would be lost if a motion to compel was improperly denied, determined that it was in the public interest to allow interlocutory appeals for arbitration denials.  *See* 9 U.S.C. § 16(c).

Courts routinely observe that granting a stay pending appeal serves the federal policy favoring arbitration and preserves judicial resources.  *See Benson v. Double Down Interactive, LLC*, No. 2:18-cv-00525-RBL, 2019 WL 972482, at *4 (W.D. Wash. Feb. 28, 2019); *see also Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *3 (N.D. Cal. May 1, 2013) ("[C]ontrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration.").  These policy concerns are especially pressing when class claims are involved and the scope of the class might change on further review.  *See Gray v. Golden Gate Nat'l Recreational Area*, No. C 08-00722 EDL, 2011 WL 933, at *3 (N.D. Cal. Dec. 29, 2011) ("[A] court should not waste its resources on matters which did not belong before it in the first place.").  Defendants thus meet the fourth prong as well.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court extend the stay currently in place pending resolution of the petitions for further review here and in *Rittmann*.

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  Respectfully submitted September 22, 2020.

2
3                                    By: s/Ryan D. Redekopp
                                     Ryan D. Redekopp, WSBA No. 36853

4                                    K&L GATES LLP
                                     925 Fourth Avenue, Suite 2900
5                                    Seattle, WA 98104-1158
                                     Telephone: (206) 370-7673
6                                    Fax: (206) 623-7022
                                     Email: ryan.redekopp@klgates.com
7

8                                    By: s/Richard G. Rosenblatt
                                     Richard G. Rosenblatt (admitted *pro hac*
9                                    *vice*)

10                                   By: s/James P. Walsh
                                     James P. Walsh (admitted *pro hac vice*)
11

12                                   MORGAN, LEWIS & BOCKIUS LLP
                                     502 Carnegie Center
13                                   Princeton, NJ 08540
                                     Telephone: (609) 916-6600
14                                   Email: rrosenblatt@morganlewis.com
                                     Email: james.walsh@morganlewis.com

15                                   Attorneys for Defendants Amazon.com, Inc.
16                                   and Amazon Logistics, Inc.

17
18
19
20
21
22
23
24
25
26

MOTION TO EXTEND STAY - 13
Case No. 2:19-cv-01320-RSM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 22, 2020, I arranged for electronic filing of the foregoing DEFENDANTS' MOTION TO EXTEND STAY with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the registered attorneys of record.

 s/James P. Walsh
James P. Walsh (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
Telephone: (609) 916-6600
Email: james.walsh@morganlewis.com

MOTION TO EXTEND STAY - 14
Case No. 2:19-cv-01320-RSM