UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNARD WAITHAKA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON LOGISTICS, INC.,<br><br>Defendants. | No. C19-01320-RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO EXTEND STAY |

## I.   INTRODUCTION

This matter comes before the Court on Defendants Amazon.com, Inc. and Amazon Logistics, Inc. (collectively, "Amazon")'s Motion to extend stay pending the U.S. Supreme Court's decision on Defendants' petitions for writ of certiorari. Dkt. #84. Plaintiff Bernard Waithaka opposes Amazon's motion. Dkt. #87. The Court finds oral argument unnecessary to rule on the issues. Having reviewed Defendants' motion, Plaintiff's response, and the remainder of the record, the Court GRANTS Defendants' motion.

//

//

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 1

## II. BACKGROUND

### A. Factual Background

Plaintiff Waithaka is an Amazon Flex ("AmFlex") delivery driver for Amazon. Amazon historically used third-party delivery providers like FedEx and UPS to deliver its products but recently began using independent contractors for delivery services for the last mile of the order. These "last mile" delivery drivers, like Plaintiff, use the AmFlex smartphone application to sign up for delivery shifts and use their own methods of transportation, such as a private vehicle, to deliver products subject to Amazon's service standards. Contractors are paid an hourly rate for their shifts but are not compensated for additional time needed to complete all their deliveries, nor are they reimbursed for gas, vehicle maintenance, or cellphone data expenses.

To work as an AmFlex driver, contractors like Plaintiff must download the AmFlex app and agree to the AmFlex Independent Contractor Terms of Service ("Agreement"). Section 11 of the Agreement provides, in part, that the Federal Arbitration Act ("FAA") and applicable federal law "will govern any dispute that may arise between the parties." Dkt. #31-2 at 10. In a separate section, the Agreement states that "interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law." *Id.* at 15.

### B. Procedural Background

Plaintiff brought this action against Defendants in Massachusetts state court alleging (1) misclassification of AmFlex drivers as contractors; (2) violation of the Massachusetts Wage Act; and (3) violation of the Massachusetts Minimum Wage Law. Dkt. #1-1. Amazon removed

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 2

the action to the U.S. District Court for the District of Massachusetts. Dkt. #1. Amazon then moved to compel arbitration or, in the alternative, to transfer or stay the case. Dkt. #29.

On August 20, 2019, Judge Hillman of the District of Massachusetts granted in part and denied in part Amazon's motion, concluding that a transfer to the Western District of Washington was proper but denying Amazon's motion to compel arbitration. Dkt. #59. On the arbitration issue, Judge Hillman concluded that Plaintiff and those similarly situated fall within the FAA's transportation worker exemption, 9 U.S.C. § 1, that Massachusetts law therefore governed the enforceability of the arbitration provision, and that the provision was unenforceable based on Massachusetts public policy. *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 343, 346, 348 (D. Mass. 2019). Amazon appealed Judge Hillman's ruling on the FAA transportation worker exemption to the U.S. Court of Appeals for the First Circuit.

On July 17, 2020, the First Circuit affirmed the district court's holding as to the scope of 9 U.S.C. § 1, agreeing that the FAA transportation worker exemption encompasses the contracts of transportation workers, like Plaintiff, "who transport goods or people within the flow of interstate commerce, not simply those who physically cross state lines the course of their work." *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020). On September 1, 2020, the First Circuit denied Amazon's petition for rehearing en banc. *See Waithaka*, No. 19-1848 (1st Cir. Sept. 1, 2020).

**C. *Rittmann* Litigation**

A group of AmFlex delivery drivers brought a separate action against Defendants in the U.S. District Court for the Western District of Washington before Judge Coughenour, alleging misclassification of AmFlex drivers as independent contractors. Amazon moved to compel arbitration pursuant to the Agreement. The district court denied Amazon's motion to compel

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 3

arbitration on the basis that plaintiffs fell within the FAA's transportation worker exemption, which the Ninth Circuit affirmed. *Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196 (W.D. Wash. 2019), *aff'd*, 971 F.3d 904 (9th Cir. 2020). Judge Bress dissented with the majority's interpretation of "engaged in foreign or interstate commerce" under 9 U.S.C. § 1 on the basis that a delivery worker must belong to a "class of workers" that crosses state lines in order to qualify for the FAA's transportation worker exemption. *Rittman*, 971 F.3d at 921 (J. Bress, dissenting). Amazon filed a petition to the Ninth Circuit for a rehearing en banc, which was pending at the time Amazon filed the instant motion.

### D. Motion to Extend Stay

Amazon moves to extend the stay of this case while awaiting (1) the Supreme Court's ruling on Amazon's forthcoming petition for a writ of certiorari in *Waithaka*; and (2) the Ninth Circuit's ruling on Amazon's petition for rehearing in *Rittmann*. After Amazon filed the instant motion, the Ninth Circuit denied rehearing en banc, *see Rittmann*, No. 19-35381, (9th Cir. Sept. 25, 2020), Dkt. #70, and Amazon filed a petition for a writ of certiorari that is now pending before the U.S. Supreme Court. *See id.*, *petition for cert. filed*, No. 20-622 (U.S. Nov. 4, 2020). Accordingly, the only basis for Amazon's motion to extend the stay is the Supreme Court's decision on its forthcoming and pending petitions for certiorari in *Waithaka* and *Rittmann*.

### III.   DISCUSSION

### A. Legal Standard

Whether to stay a lawsuit is within this Court's discretion. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1105 (9th Cir. 2005). In considering a stay request, courts weigh the competing interests that will be affected:

//

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 4

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1105 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Here, Amazon seeks a stay pending the U.S. Supreme Court's decision on its petitions for writ of certiorari. In this situation, the Supreme Court has provided criteria to consider when determining whether a stay is appropriate. "[J]udges of the lower courts [ ] apply the same criteria" as the Supreme Court. *United States v. Holland,* 1 F.3d 454, 456 (7th Cir. 1993). An applicant seeking a stay must demonstrate: "(1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the [Supreme] Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *Packwood v. Senate Select Comm. on Ethics,* 510 U.S. 1319 (1994) (Rhenquist, J., in chambers) (citing *Barnes v. E–Systems, Inc. Group Hosp. Med. & Surgical Ins. Plan,* 501 U.S. 1301, 1302 (1991) (Scalia, J., in chambers)). In addition to considering these factors, courts must "balance the equities—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes*, 501 U.S. at 1305.

//

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 5

**B. Authority to Issue a Stay**

As an initial matter, Plaintiff argues that this Court lacks authority to stay the case under 28 U.S.C. § 2101(f) pending the Supreme Court's disposition of Amazon's certiorari petitions. Dkt. #87 at 6-7. However, as Amazon correctly points out, it is not moving to stay an appellate mandate or enforcement of a judgment under Section 2101. *See* 28 U.S.C. § 2101(f). Rather, Amazon moves to stay trial court proceedings pursuant to this Court's "inherent power" to control its docket. Dkt. #88 at 6 (citing *Clinton*, 520 U.S. at 706-07; *Lockyer v. Mirant Corp.*, 398 F.3d at 1109).

The Court agrees with Amazon. While district courts are not routinely presented with motions to stay due to pending certiorari petitions, several have considered the issue pursuant to their inherent power to manage their own dockets. *See, e.g.*, *Fletcher v. Losh*, No. 1:15-CV-00029-REB, 2019 WL 4453703, at *3 (D. Idaho Sept. 17, 2019); *Bryant v. Jones*, No. 1:04-CV-2462-WSD, 2010 WL 11482535, at *1 (N.D. Ga. Feb. 2, 2010); *United States v. Mandycz*, 321 F. Supp. 2d 862 (E.D. Mich. 2004). Consistent with these cases, this Court finds that it has sufficient authority to issue a stay in this matter.

Having resolved this preliminary issue, the Court will now analyze whether a stay is warranted.

**C. Analysis of *Packwood* Factors**

For the Court to grant a stay, Amazon must demonstrate (1) a reasonable probability that four Justices will vote to grant certiorari; (2) a significant possibility that the Supreme Court will reverse the First and Ninth Circuits; and (3) a likelihood of irreparable harm, assuming the correctness of Amazon's position, if the judgment is not stayed. *Packwood*, 510 U.S. 1319. Amazon bears the burden to show that each of these factors is met. *Clinton*, 520 U.S. at 708.

### i. Probability of Granting Certiorari

It is well-established that the Supreme Court rarely grants certiorari. *See* Margaret Meriwether Cordray & Richard Cordray, *The Calendar of the Justices: How the Supreme Court's Timing Affects its Decisionmaking*, 36 Ariz. St. L.J. 183, 204 (2004) (Observing that Court granted, on average, 1.19% of the petitions for certiorari that it reviewed). Pursuant to Supreme Court rules, review on a writ of ceriotrari "is not a matter of right, but of judicial discretion." Sup. Ct. R. 10. Rule 10 sets forth several circumstances in which the Supreme Court may consider granting a writ, including:

> (a) a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; has decided an important federal question in a way that conflicts with a decision by a state court of last resort; or has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power;
>
> . . .
>
> (c) a state court or a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.

Sup. Ct. R. 10.

Here, Amazon argues it is likely to succeed in seeking review by the Supreme Court due to (1) a circuit split on the issue of whether AmFlex workers involved in "last mile" transport may qualify for the arbitration exemption; and (2) conflict between Supreme Court precedent and the *Waithaka* and *Rittman* decisions. The Court will address each argument in turn.

//

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 7

First, Amazon argues that conflict between the courts of appeals creates a "greater than usual likelihood" that the Supreme Court will grant certiorari. Dkt. #84 at 7 (Citing Sup. Ct. R. 10(a)). The Supreme Court's rules define a "circuit split" warranting certiorari as a disagreement between circuit courts that is severe enough to the point that one court of appeals' decision is "*in conflict with* the decision of another United States court of appeals on the same important matter . . . ." S. Ct. R. 10 (emphasis added). For the reasons set forth below, the Court does not find "reasonable probability" that certiorari will be granted based on a circuit split.

On the narrow issue of whether AmFlex drivers are exempt from the FAA, both courts that have considered this issue reached the same conclusion. *See Waithaka*, 966 F.3d 10 (Transportation worker exemption applies to AmFlex drivers); *Rittmann*, 971 F.3d 904 (same). Since Amazon filed this motion, the Ninth Circuit denied rehearing en banc in *Rittman*. Consequently, there is no circuit split on the specific issue of whether the FAA transportation worker exemption applies to AmFlex drivers.

In light of the consistent rulings in *Rittman* and *Waithaka*, Amazon poses a broader question to this Court of whether other circuit courts have applied standards different from those applied in *Waithaka* and *Rittman* when analyzing whether employees are subject to the FAA transportation worker exemption. Specifically, Amazon argues that the First and Ninth Circuits have read 9 U.S.C. § 1 to encompass workers who transport goods in localized intrastate commerce, so long as interstate transportation by other workers is involved at some point, whereas the Third, Fifth, Sixth, Seventh, and Eleventh Circuits require that employees transport goods or persons across state lines in order to be engaged in "interstate commerce" for purposes of qualifying for the exemption. *Id.* (*comparing Waithaka, Inc.*, 966 F.3d at 13; *Rittmann*, 971

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 8

F.3d 904 *with Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir. 2019); *Eastus v. ISS Facility Servs., Inc.*, 960 F.3d 207 (5th Cir. 2020); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286 (11th Cir. 2005)). Amazon contends that this inter-circuit conflict is evidenced by (1) the Ninth Circuit's recent decision in *Grice*, 974 F.3d 950; and (2) Judge Bress' dissent in *Rittman*, which identified conflict with *Wallace* and *Singh*. Dkt. #84 at 13. Having reviewed the Ninth Circuits' decisions in *Grice* and *Rittman*, the Court finds that neither supports a "reasonable probability" that the Supreme Court will grant certiorari based on a circuit split.

In *Grice*, the Ninth Circuit did not identify a conflict with its earlier decision in *Rittman* or the First Circuit's holding in *Waithaka*. On the contrary, it merely distinguished the nature of the work performed by Uber drivers compared to AmFlex drivers. *See Grice*, 974 F.3d at 957 ("*Waithaka*'s holding was limited to the § 1 exemption status of AmFlex drivers, not gig-economy drivers in general . . . Our recent decision in *Rittman* confirms this conclusion. . . . On this record, we cannot say that Uber drivers perform, or are hired to perform, a similar function to AmFlex workers."). Despite the Ninth Circuit's effort to distinguish *Waithaka* and *Rittman* from *Grice*, Amazon insists that the panel "admitted that the district court ruling it upheld was 'in tension' with *Waithaka* and *Rittman*." Dkt. #84 at 13 (citing *Grice*, 974 F.3d at 957). The Court disagrees. The full excerpt from *Grice* reads:

> Grice notes that the district court also found it significant that he transported passengers, as opposed to goods, and that he never personally crossed state lines. But *to the extent these findings are in tension* with cases such as *Singh*, *Waithaka*, *Rittman*, and *Rogers*, which emphasized the interstate nature of an employer's business as the critical factor for determining whether a worker qualifies for the § 1 exemption, Grice has still not shown that he

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 9

is entitled to mandamus relief.

*Grice*, 974 F.3d at 957 (emphasis added).  Here, *Grice* merely acknowledges the possibility of tension between the district court's analysis and other FAA Section 1 cases.  It does not support the more drastic position advocated by Amazon that a clear circuit split exists.[1]

Turning to the *Rittman* dissent, the Court likewise finds minimal support for Amazon's argument that certiorari is "reasonably possible" based on a circuit split.  Amazon relies on Judge Bress' dissent as an indication of "real disagreement" among the Courts of Appeal.  Dkt. #88 at 7 (internal quotations omitted).  However, Amazon points to no other circuit that has agreed with the Bress dissent and rejected the majority opinion, as a circuit split requires.  *Cf. NGV Gaming, Ltd. v. Harrah's Operating Co.*, No. 04-3955 SC, 2008 WL 4951587, at *1 (N.D. Cal. Nov. 18, 2008) (Finding a "possible circuit split" in light of "a recent decision by the Second Circuit agreeing with the dissent and rejecting the majority in the Ninth Circuit's decision").  Consequently, the Court finds Judge Bress' dissent insufficient, on its own, to support a "reasonable probability" that certiorari will be granted based on a circuit split.

Next, Amazon argues that certiorari is likely given the First and Ninth Circuits' inconsistency with Supreme Court precedent on an important question of federal law.  Dkt. #84 at 13-15 (citing Sup. Ct. R. 10(c)).  Amazon argues that the Supreme Court is likely to grant certiorari given that the First and Ninth Circuits' decisions in *Waithaka* and *Rittman* conflict with Supreme Court precedent in (1) *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); (2) *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 563 (2017); and (3) *McDermott Int'l,*

---

[1] The Seventh Circuit in *Wallace* took a similar approach to *Grice*, where it approvingly cited *Waithaka*, *Singh*, *Hill* and *Asplundh* and distinguished the facts of each case without identifying any conflict with its sister circuits' holdings.  *See Wallace*, 970 F.3d at 802, n.2.

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 10

*Inc. v. Wilander*, 498 U.S. 337, 348 (1991). Because the Court finds conflict with *Circuit City* dispositive of the issue, it need not address *Lightfoot* and *McDermott*.

Amazon argues that *Circuit City* focused on "whether the § 1 exemption applied *only* to transportation workers (as opposed to all workers)" whereas the First and Ninth Circuits "focused on whether there are 'transport[ed] goods or people *within* the flow of interstate commerce.'" Dkt. #84 at 14 (emphases in original) (quoting *Waithaka*, 966 F.3d at 13). Plaintiff counters that both *Waithaka* and *Rittman* "cited *Circuit City* numerous times, and duly considered its principles." Dkt. #87 at 13. Indeed, in reaching their decisions, *Waithaka* and *Rittman* expressly applied the principles set forth in *Circuit City*. *See Waithaka,* 966 F.3d at 17; *Rittmann,* 971 F.3d at 909–10.

Notwithstanding the fact that the First Circuit and Ninth Circuit majority addressed *Circuit City*, one judge on the Ninth Circuit panel agreed with Amazon's position. Judge Bress stated in dissent that Amazon's reading of 9 U.S.C. § 1 was more consistent with the principles set forth in *Circuit City*, whereas the majority's approach improperly stretched the transportation worker exemption beyond the "narrow and precise" construction urged by the Supreme Court. *See id.* at 928, 931 ("The Supreme Court has cautioned against introducing 'complexity and uncertainty [into] the construction of § 1'because it 'undermin[es] the FAA's proarbitration purposes,' . . . Amazon's reading of the FAA is much more consistent with this objective. The majority's interpretation, by contrast, foments substantial problems of practical application and produces inequities among similarly situated workers.") (J. Bress, dissenting) (quoting *Circuit City*, 532 U.S. at 123). Considering Judge Bress' dissent, and the fact that the Supreme Court has not previously considered the issue of whether AmFlex drivers are exempt

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 11

from the FAA under 9 U.S.C. § 1, the Court finds "reasonable probability" that certiorari could be granted to address a conflict with *Circuit City*.

### ii. Likelihood of Reversal

With respect to likelihood of reversal, the Court acknowledges that the Ninth Circuit and First Circuit denied rehearing en banc in *Rittman* and *Waithaka*, respectively. This procedural history ostensibly diminishes the likelihood of success at the Supreme Court level. Nevertheless, the Court finds that Judge Bress' dissent, compounded by the novelty of the issue on review, raises a sufficiently "significant possibility" of reversal to satisfy the second *Packwood* factor. *Packwood*, 510 U.S. 1319.

### iii. Likelihood of Irreparable Harm

Finally, the Court considers the likelihood of irreparable harm Amazon would suffer, assuming its position is correct. *See id.* Amazon argues that without an extension of the stay, it would be irreparably harmed by the costs of continuing to litigate the dispute—particularly given the possibility of a class action. Dkt. #84 at 15-17. The Court finds that this factor strongly favors a stay for the reasons set forth below.

In cases where an interlocutory appeal of a motion to compel arbitration is pending, courts find a stay warranted to prevent "the risk of arbitration becoming moot and the possibility of having to litigate a class action." *Wilson v. Huuuge, Inc.*, No. 3:18-CV-05276-RBL, 2019 WL 998319, at *4 (W.D. Wash. Mar. 1, 2019). Plaintiff argues that findings of irreparable harm are limited to cases where the movant would incur trial expenses, *see* Dkt. #87 at 12-13, but courts have also recognized burdensome discovery as a basis to grant a stay. *See Bradberry v. T-Mobile USA, Inc.*, No. C 06 6567 CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) ("[A] stay would be appropriate when the trial date approaches *or if discovery were*

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 12

*burdensome*. . . . The cost of some pretrial litigation does not constitute an irreparable harm to Defendant.") (emphasis added).  It is undisputed that in a putative class action, as is the case here, the burdens of discovery "are substantially greater than in an individual arbitration." *Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2011 WL 1213176 (W.D. Wash. Apr. 24, 2012).

Furthermore, when the pending issue concerns the arbitrability of the dispute, courts in the Ninth Circuit "have taken a more relaxed approach to stay requests" given the fact that "the right to arbitrate would be devalued, if not rendered meaningless, if litigation proceeded apace." *Cherny v. AT&T, Inc.*, No. CV 09-3625-GW AGRX, 2010 WL 2572929, at *1 (C.D. Cal. Feb. 8, 2010) (granting stay pending outcome of certiorari petition).  Here, denial of the stay could potentially result in Amazon litigating hundreds of claims on a class-wide basis.  Assuming Amazon's position is correct, the costs of burdensome class action discovery, including time, money, and resources, would be unrecoverable.

Plaintiff counters that burdensome discovery costs are not compelling reasons to stay the case, given that "substantial discovery into Amazon's business practices" would be necessary regardless of whether Mr. Waithaka is required to arbitrate his claim. Dkt. #87 at 12.  This argument is unavailing, given that discovery would be significantly more burdensome in a class action against Amazon compared to Mr. Waithaka's individual claim.  *See Del Rio v. Creditanswers, LLC*, No. 10-CV-346 WQH (BLM), 2010 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010) ("The difference in litigation expenses between a two-party case and a class action is substantial.").

Plaintiff also points out that many of the cases Amazon relies upon address irreparable harm in the context of interlocutory appeals, not petitions for certiorari, which are "materially different" because the moving party's varying likelihood of success. Dkt. #87 at 13, n.9.  While

the likelihood of Amazon prevailing at the certiorari stage is certainly lower compared to the interlocutory appeal stage, *Packwood* merely requires this Court to determine whether a "significant possibility" of reversal exists and, if so, to analyze whether irreparable harm exists "assuming the correctness of the applicant's position, if the judgment is not stayed." *Packwood,* 510 U.S. at 1319. Here, the Court has determined that the possibility of reversal exists, and that Amazon would suffer irreparable harm if improperly forced to litigate hundreds of claims.

For these reasons, the Court finds that Amazon has satisfied the third *Packwood* factor.

### D. Balance of the Equities

Finally, the Court considers the balance of the equities, including the relative harms to Plaintiff and Amazon and the public interest. *Barnes*, 501 U.S. at 1305. Regarding the harms to Plaintiff, the Court is well-aware of the protracted nature of this dispute, which has been pending for three years, and acknowledges the risk of evidence growing stale as the case proceeds through various procedural stages. However, while courts have found that lengthy delays weigh heavily against a stay, the cases relied upon by Plaintiff involve cases that were pending between four and five years. *See, e.g. 1st Media, LLC v. doPi Karaoke, Inc.,* No. 2:07-CV-1589 JCM NJK, 2013 WL 1250834, at *1 (D. Nev. Mar. 27, 2013); *Fletcher,* 2019 WL 4453703, at *3. This matter, in contrast, has not been pending for that length of time.

Moreover, an extension of the stay in this matter would not be "indefinite," as Plaintiff contends. *See* Dkt. #87 at 6. Rather, the stay would only last until the arbitration question is more conclusively resolved, which may happen as soon as February 2021. *See* Dkt. #90 at 2 (Amazon representing that the Supreme Court is scheduled to rule on the *Rittman* certiorari petition in February). In considering the harms Plaintiff will suffer from further delay, including stale evidence, unavailable witnesses, and ongoing harm due to unpaid wages, the

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 14

Court considers the fact that Plaintiff may at any time avoid further delay by proceeding to arbitration. In contrast, the significant time, money and resources spent litigating a class action claim that is ultimately sent to arbitration would not be recoverable.

In sum, having balanced the relative harms to Plaintiff and Amazon, the Court finds that a stay is warranted until the arbitration question is more conclusively resolved. While the probability of certiorari and reversal are not inordinately high, the *Rittman* dissent indicates that a reasonable possibility exists. Thus, considering these probabilities alongside the relatively high harm to Amazon if a stay is denied compared to the relatively low harm to Plaintiff if a stay is granted, the balance of the equities tips in favor of Amazon. Finally, while the Court finds the public interest factor less relevant here, it notes that the interests of judicial economy, as well as the novelty of the question before the Supreme Court, also weigh in favor of a stay.

### E. Length of Stay

Amazon requests that the Court extend the stay until the final resolution of *Waithaka v. Amazon.com, Inc., et al.* (1st Cir. No. 19-1848), **and** *Rittmann v. Amazon.com, Inc., et al.* (9th Cir. No. 19-35381). *See* Dkt. #84-1 at 1. However, Amazon has not yet filed its certiorari petition in *Waithaka*. *See* Dkt. #90 at 2. Considering that the disposition of the *Rittman* petition directly implicates the probability that *Waithaka* will be granted, and visa versa, the Court will extend the stay until the final resolution of *Waithaka* **or** *Rittman*, but not both. Should Amazon seek to extend the stay until both are resolved, it may seek such relief at a later time.

### IV.   CONCLUSION

Having reviewed Defendants' motion, Plaintiff's response, and the remainder of the record, the Court GRANTS Defendants' Motion to Extend Stay, Dkt. #84, and ORDERS as follows:

ORDER GRANTING DEFENDANTS'
MOTION TO EXTEND STAY- 15

(1) This matter is stayed until the final resolution of *Waithaka v. Amazon.com, Inc., et al.* (1st Cir. No. 19-1848), or *Rittmann v. Amazon.com, Inc., et al.* (9th Cir. No. 19-35381), whichever occurs first;

(2) Defendants shall notify the Court in writing, within ten days of any disposition of its petitions for certiorari by the Supreme Court.

IT IS SO ORDERED.

Dated this 30th day of November, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE