Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNARD WAITHAKA, on behalf of himself and all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC., AMAZON LOGISTICS, INC.,

Defendants

Case No. 2:19-cv-01320-RSM

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Noted on Motion Calendar: August 13, 2021

**ORAL ARGUMENT REQUESTED**

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 4

III.  LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ..................................................................................................... 6

      A.    Waithaka Fails to Establish Commonality or Predominance. ............... 6

      B.    Plaintiff Has Not Demonstrated that His Claims Are Typical or that He Is
            an Adequate Class Representative. .................................................... 22

      C.    Plaintiff Ignores the Manageability Problems That Would Deny Amazon
            the Right to Present Its Individualized Defenses—Defeating Superiority. ......... 23

V.    CONCLUSION .................................................................................................. 24

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION - i
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**CASES**

5

*AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*,
   921 F.3d 282 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 1105 (2020) ..........................................8

6

7

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013).................................................................................................................1

8

*Ass'n of Women with Disabilities v. Mulubrhan*,
   2006 WL 8455500 (S.D. Cal. 2006)......................................................................................23

9

10

*Awuah v. Coverall N. Am., Inc.*,
   460 Mass. 484 (2011) ............................................................................................................15

11

*Baker v. Lvovskiy*,
   2006 WL 2627577 (Mass. Super. 2006)..................................................................................9

12

13

*Bowerman v. Field Asset Servs., Inc.*,
   2014 WL 4676611 (N.D. Cal. 2014) .....................................................................................14

14

*Cal. Trucking Ass'n v. Bonta*,
   996 F.3d 644 (9th Cir. 2021) ...................................................................................................8

15

16

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013)...................................................................................................24

17

18

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) .................................................................................3, 15, 19, 21

19

*Chambers v. RDI Logistics, Inc.*,
   476 Mass. 95 (2016) ................................................................................................................7

20

21

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)...............................................................................................................6, 22

22

*Converse v. Vizio, Inc.*,
   2020 WL 2922490 (W.D. Wash. 2020)..................................................................................22

23

24

*Costello v. BeavEx, Inc.*,
   810 F.3d 1045 (7th Cir. 2016) .................................................................................................9

25

26

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Coverall N. Am., Inc. v. Com'r of Div. of Unemp. Assis.*,
  447 Mass. 852 (2006) ...........................................................................................14

5

*Darvin v. Int'l Harvester Co.*,
  610 F. Supp. 255 (S.D.N.Y. 1985) ........................................................................23

6

7

*DaSilva v. Border Transfer of MA, Inc.*,
  296 F. Supp. 3d 389 (D. Mass. 2017) ...............................................................8, 12

8

9

*Davidson v. O'Reilly Auto Enters., LLC*,
  968 F.3d 955 (9th Cir. 2020) ..................................................................................4

10

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..............................................................................................24

11

12

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ....................................................................6, 22, 23

13

14

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) ................................................................................................8

15

*Gartin v. S & M NuTec LLC*,
  245 F.R.D. 429 (C.D. Cal. 2007) ..........................................................................24

16

17

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
  169 P.3d 889 (Cal. 2007) ......................................................................................16

18

19

*Guifu Li v. A Perfect Franchise, Inc.*,
  2011 WL 4635198 (N.D. Cal. 2011) ..........................................................14, 15, 19

20

*Hamilton v. Partners Healthcare Sys.*,
  209 F. Supp. 3d 379 (D. Mass. 2016) ...................................................................20

21

22

*Harris v. Vector Mktg. Corp.*,
  753 F. Supp. 2d 996 (N.D. Cal. 2010) ..................................................................24

23

24

*Harvey v. Centene Mgt. Co.*,
  2020 WL 2411510 (E.D. Wash. 2020) ...............................................15, 19, 21, 22

25

*Herrera v. Zumiez, Inc.*,
  953 F.3d 1063 (9th Cir. 2020) ..............................................................................19

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - iii
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

3

*Hill v. Walmart Inc.*,

4
    2021 WL 342574 (N.D. Cal. 2021) ..................................................................14

5

*Hogan v. InStore Grp., LLC*,
    2021 WL 91386 (D. Mass. 2021) ..................................................................10

6

*In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*,

7
    273 F.R.D. 516 (N.D. Ind. 2010) ..................................................................9

8

*James v. Uber*,

9
    338 F.R.D 123 (N.D. Cal. 2021) ...........................................................11, 13, 15

10

*Jammeh v. HNN Assocs., LLC*,
    2020 WL 5407864 (W.D. Wash. 2020) ..................................................................23

11

*Konik v. Time Warner Cable*,

12
    2010 WL 8471923 (C.D. Cal. 2010).................................................................9

13

*Lawson v. Grubhub, Inc.*,

14
    302 F. Supp. 3d 1071 (N.D. Cal. 2018) ..................................................................23

15

*Magalhaes v. Lowe's Home Ctrs., Inc.*,
    2014 WL 907675 (D. Mass. 2014) ...................................................... passim

16

*Maldonado v. Cultural Care, Inc.*,

17
    2021 WL 3190890 (D. Mass 2021) ...............................................................15, 21

18

*Marlo v. UPS, Inc.*,

19
    639 F.3d 942 (9th Cir. 2011) ..................................................................6

20

*Martinez v. Flower Foods, Inc.*,
    2016 WL 10746664 (C.D. Cal. 2016)..................................................................13

21

*Mass. Delivery Ass'n v. Healey*,

22
    821 F.3d 187 (1st Cir. 2016)..................................................................7

23

*Mendoza v. Home Depot, U.S.A. Inc.*,
    2010 WL 424679 (C.D. Cal. 2010)..................................................................24

24

*Narayan v. EGL, Inc.*,

25
    285 F.R.D. 473 (N.D. Cal. 2012)..................................................................2, 14

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Newton v. Thomason*,

4
    22 F.3d 1455 (9th Cir. 1994) .......................................................................................8

5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

6
    993 F.3d 774 (9th Cir. 2021) ...............................................................3, 9, 15, 21

7

*Ouadani v. Dynamex Operations E., LLC*,
    405 F. Supp. 3d 149 (D. Mass. 2019) .......................................................................7

8

*Perrin v. Papa John's Int'l, Inc.*,

9
    114 F. Supp. 3d 707 (E.D. Mo. 2015).....................................................................17

10

*Quesada v. Banc of Am. Inv. Servs., Inc.*,
    2013 WL 623288 (N.D. Cal. 2013) ..........................................................................6

11

*Raposo v. Garelick Farms, LLC*,

12
    293 F.R.D. 52 (D. Mass. 2013).................................................................................20

13

*Ruiz v. Affinity Logistics Corp.*,

14
    2009 WL 648973 (S.D. Cal. 2009)..........................................................................17

15

*Saavedra v. Eli Lilly & Co.*,
    2014 WL 7338930 (C.D. Cal. 2014)........................................................................22

16

*Salter v. Quality Carriers, Inc.*,

17
    2021 WL 2333098 (C.D. Cal. 2021)..................................................................11, 12

18

*Schwann v. FedEx Ground Package Sys., Inc.*,

19
    2013 WL 1292432 (D. Mass. 2013) ...................................................................9, 13

20

*Schwann v. FedEx Ground Package Sys., Inc.*,
    813 F.3d 429 (1st Cir. 2016) .....................................................................................7

21

*Six Mexican Workers v. Ariz. Citrus Growers*,

22
    904 F.2d 1301 (9th Cir. 1990) ...........................................................................23, 24

23

*Soles v. Zartman Const., Inc.*,

24
    2014 WL 3557197 (M.D. Pa. 2014) ........................................................................20

25

*Stallsmith v. Linder Psychiatric Grp.*,
    2016 WL 279271 (E.D. Cal. 2016)..........................................................................20

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - v
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013)..................................................................................2, 9

5

6

*Tokoshima v. Pep Boys-Manny Moe & Jack of Cal.*,
    2014 WL 1677979 (N.D. Cal. 2014) ......................................................19

7

*Torres v. Wells Fargo Bank, N.A.*,
    2019 WL 7169793 (C.D. Cal. 2019).........................................................9

8

9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..........................................................................3, 21

10

*Urena v. Earthgrains Distrib., LLC*,
    2017 WL 4786106 (C.D. Cal. 2017)........................................................13

11

12

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .................................................................................8

13

14

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ...............................................................22

15

*Vargas v. Spirit Delivery & Distrib. Servs., Inc.*,
    245 F. Supp. 3d 268 (D. Mass. 2017) ......................................................8

16

17

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ...................................................................6

18

19

*Vitali v. Reit Mgmt. & Research, LLC*,
    36 N.E.3d 64 (Mass. App. Ct. 2015) ......................................................20

20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................6, 24

21

22

*Weld v. Glaxo Wellcome, Inc.*,
    434 Mass. 81 (2001) ...........................................................................9, 22

23

24

*Wilson v. La Jolla Grp.*,
    61 Cal. App. 5th 897 (2021) ...................................................................18

25

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................24

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - vi
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## TABLE OF AUTHORITIES
### (continued)

Page(s)

STATUTES

49 U.S.C. § 13102(2), (14) ...................................................................................7

49 U.S.C. § 14501(b)-(c) ......................................................................................7

Federal Aviation Administration Authorization Act ("FAAAA") ..................2, 6, 7, 8

FLSA.........................................................................................................................20

M.G.L. ch. 149 § 148 ........................................................................................15, 18

M.G.L. ch. 149, § 148B .................................................................................2, 10, 11

Massachusetts Wage Act .......................................................................................2, 7

OTHER AUTHORITIES

454 Mass. Reg. § 27.04(4)(a).................................................................................16

Fed. R. Civ. P. 23 ........................................................................................... passim

John Voelcker, *Taking Advantage Of Your IRS Mileage: Hybrid Cars Can Help*, GREEN CAR
    REPORTS (Apr. 11, 2011), https://tinyurl.com/25w65ac4 .......................................17

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - vii
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1
## I.   **INTRODUCTION**

2     Bernard Waithaka is a self-described "businessman" who has provided services as an

3 independent contractor for nearly twenty years, including running his own last-mile delivery

4 company with two box trucks, driving for Uber and Lyft, and since 2017 making deliveries to

5 Amazon customers through the Amazon Flex program. Waithaka testified that he starts his day

6 making Amazon Flex deliveries and then later drives for Uber and Lyft, which provides flexibility

7 to be home with his children in the afternoon. Nonetheless, Waithaka seeks to have every

8 Massachusetts Delivery Partner reclassified from independent contractor to employee, even

9 though he has now testified that he would not necessarily accept employment with Amazon if that

10 was a requirement. Claiming that he should be an "employee," he seeks reimbursement for certain

11 expenses. He now admits, however, that his cell phone expenses are unaffected by using the

12 Amazon Flex app and his mileage records are inaccurate and include miles for non-reimbursable

13 commutes to and from home or driving for Uber or Lyft. He also claims that Amazon failed to pay

14 him minimum wage for seven weeks in 2017 (conceding he received at least the minimum wage

15 for eight others). Scrutiny of that individualized analysis—supported by a declaration from his

16 attorney's paralegal ("McCarty Decl.")—however, reveals that it is based on flawed and inflated

17 assumptions about how much time Waithaka actually worked and the same inaccurate and inflated

18 mileage data that Waithaka uses for his mileage reimbursement claim.

19     The question on this motion is whether Waithaka can pursue these claims on behalf of a

20 class of every Massachusetts Delivery Partner based on nothing more than his own declaration

21 vaguely describing *his* experience and a flawed analysis by his counsel's paralegal. The answer is

22 squarely no. He has submitted no discovery, trial plan, or damages model—despite his burden to

23 prove that all putative class members suffered injury and have standing. In fact, he offers no

24 explanation of how he could establish liability as to the claims of thousands of Delivery Partners.

25 Simply put, Waithaka cannot satisfy Rule 23's "stringent requirements for certification that in

26 practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION - 1
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1. Waithaka ignores that he must present common proof that the Service Fees Amazon paid were deficient as to *all* putative class members under the Massachusetts Wage Act. Instead, he focuses on the supposedly common issue of whether Amazon should have classified Delivery Partners as employees under the Wage Act. But whether he (or anyone else) is a covered employee under the Wage Act is a far different question from whether Amazon violated the Act.

2. Waithaka also too narrowly focuses on Prong B of Massachusetts' ABC employment classification test, M.G.L. ch. 149, § 148B, arguing that the Court can certify based solely on Prong B. Then Waithaka contends that providing supposedly common proof of the nature of Amazon's business is all he needs to do under Rule 23. Mot. 2, 11, 14. Not so. First, the Federal Aviation Administration Authorization Act ("FAAAA") preempts Prong B as applied to the Wage Act. So, supposedly common evidence under Prong B is irrelevant. Second, even if Prong B applied, Waithaka cannot ignore Prongs A and C. In effect, Waithaka posits that every wage and hour class action under any ABC test must automatically be certified because the nature of the employer's business under Prong B always will be subject to common proof. That is not the law. Otherwise, Waithaka could impermissibly bind absent class members to waive Prongs A and C before a class is certified. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). Moreover, in ignoring Rule 23's commonality and predominance requirements, Waithaka forgets that Prong B is a *two-sided* inquiry that compares the nature of Amazon's business with that of *each* Delivery Partner. But Waithaka has not done this, submitting only his own declaration which ignores key differences between his experience and that of other Delivery Partners.

3. Waithaka also attempts to avoid Rule 23's commonality and predominance requirements by ignoring that Massachusetts' employment test requires asking whether each Delivery Partner is (A) free from alleged control "both under his contract" and "in fact," and (C) *engaged* in an independent business. M.G.L. ch. 149, § 148B(a)(1). Yet, Waithaka conceded in his deposition to driving for Uber and Lyft at the same time he was paid to make deliveries to Amazon customers— a fact highly relevant to Prongs A and C. *E.g.*, *Narayan v. EGL, Inc.*, 285 F.R.D. 473, 478 (N.D.

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 2
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   Cal. 2012). These questions cannot be answered for the whole class because Delivery Partners

2   avail themselves of their independence from Amazon to different degrees and in different ways.

3       4. Even if the Court could adjudicate Delivery Partners' *classification* on a class-wide basis,

4   it cannot do so for individual minimum wage and expense reimbursement *claims* because there is no

5   common method to determine liability or calculate damages. The proposed class would, contrary to

6   established law, sweep up Delivery Partners who have suffered no injury *at all* because the fees

7   Amazon paid them amply covered minimum wage plus alleged expenses. *TransUnion LLC v.*

8   *Ramirez*, 141 S. Ct. 2190, 2208 (2021) (every class member must maintain standing "at all stages

9   of litigation"); *Castillo v. Bank of Am., NA*, 980 F.3d 723, 733 (9th Cir. 2020) (no predominance

10  if plaintiff "has not provided a common method of proof to determine liability"); *Olean Wholesale*

11  *Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 791-92 (9th Cir. 2021) (no

12  predominance if more than a de minimis number of class members are not shown to be injured under

13  plaintiff's theory). The Court would then need to conduct individualized inquiries into actual hours

14  worked and necessary and reasonable expenses to determine liability for each class member just

15  to determine the existence of any injury. Those inquiries would defeat the purpose of a class action.

16      5. Nor can Waithaka prove typicality or adequacy. For example, upon scrutiny of (and his

17  testimony about) the evidence he has submitted, it now is clear that Amazon paid him above the

18  minimum wage in every week he claims to have been paid below the minimum wage, raising

19  significant typicality and standing questions. In addition, the record establishes that, despite now

20  claiming to be an employee, Waithaka held himself out as a contractor to the Internal Revenue

21  Service and the Small Business Administration, undermining his claim here to have been

22  misclassified; there also are significant other questions, as explained further below, regarding his

23  credibility, making him inadequate as a class representative.

24      6. Manageability concerns abound as to the many employment and liability inquiries this

25  case presents. Yet Waithaka offers *no trial plan* or damages model, which warrants denial.

26      Waithaka failed to carry his burden of "affirmatively demonstrat[ing]"—with actual

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 3
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  evidence—that class certification is warranted. *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d

2  955, 968 (9th Cir. 2020) (citation omitted). The Court should deny Waithaka's motion.

## II.      BACKGROUND

To support its retail business, Amazon is engaged in "fulfillment" and "logistics"; while it

arranges for local deliveries, it doesn't make local deliveries. Order "fulfillment" speaks to the

process whereby third-party wholesalers, manufacturers, or sellers ship products to Amazon

Fulfillment Centers, where Amazon warehouses them and, once ordered by customers, readies

them for shipment to smaller facilities. Amazon contracts with various third parties to make

deliveries to customers. *See* Declaration of Max Haubold ("Haubold Decl.") ¶¶ 5, 7. Delivery

Partners do not enter the picture, *if at all*, until packages make their way to local Amazon delivery

stations or locations such as Whole Foods Markets ("WFM"). *Id.* ¶ 7; Declaration of James Walsh

("Walsh Decl."), Ex. A, Waithaka Deposition Transcript ("Dep.") 214:6-219:6 (no involvement

in selecting packages; packages are brought to him). Only then are *some* packages picked up by

Delivery Partners. Haubold Decl. ¶ 7. Most are picked up and delivered by national, local, or

regional delivery companies. *Id. Thousands* of sellers on Amazon's website choose to warehouse

and ship their own products directly to customers; Delivery Partners never touch those packages,

either. *Id.* ¶ 9. Amazon contracts with Delivery Partners to provide supplemental local delivery

services similar to how it contracts with larger delivery vendors. *Id.* ¶¶ 5-6.

Delivery Partners operate under Independent Contractor Terms of Service ("TOS"). The

TOS provide that Delivery Partners "decide the means and manner in which to provide the Services

and achieve the results that [they] have agreed to provide" and "are free to map out [their] own

routes, sequence [their] deliveries and in every other way control the means and manner in which

[they] deliver Deliverables." *Id.* ¶¶ 14-17, Exs. A-C at Ex. A, ¶ III.B. Amazon pays flat "Service

Fees"—which pay for deliveries *and* "any expenses [Delivery Partners] may incur." *Id.* ¶¶ 14-17,

Exs. A-C at ¶ 3. Amazon would "offer lower Service Fees" if it separately paid expenses. *Id.*

Delivery Partners present varying circumstances. Some do not deliver *packages* to Amazon

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 4
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

customers (Dkt. 97-1 ¶ 5), but rather only deliver food from WFM or through the Amazon Fresh program. *Id.* ¶ 8; Declaration of Mark Hammond ("Hammond Decl.") ¶ 6. Many, including Waithaka, drive and/or deliver for other Apps, like Uber, Lyft, and GrubHub. Walsh Decl., Ex. B, Waithaka Interrogatory Resp. ("ROG") No. 2 (drives for Uber and Lyft); *see also* Declaration of Brad Oswalt ("Oswalt Decl.") ¶¶ 2, 5; Declaration of Mate Takacs ("Takacs Decl.") ¶ 15; Declaration of Lance Jewett ("Jewett Decl.") ¶¶ 5, 13. Some deliver using personal vehicles, but others may not, Oswalt Decl. ¶ 13; Takacs Decl. ¶ 12; ROG No. 3; some (but not others) never visit Amazon warehouses, Oswalt Decl. ¶ 8; Takacs Decl. ¶ 5; some (but not others) maintain mileage records that need to be scrutinized for accuracy, Oswalt Decl. ¶ 9; Takacs Decl. ¶ 8; Hammond Decl. ¶ 12; Jewett Decl. ¶13; Declaration of Meghan Mainella ("Mainella Decl.") ¶ 7.

Service Fees vary by block and are based on anticipated hours to complete deliveries. Some Delivery Partners like Waithaka "quite often" take less time to make deliveries than the estimated delivery time, increasing the effective hourly rate. Dep. 127:11-128:13; Oswalt Decl. ¶ 11; Takacs Decl. ¶ 10; Hammond Decl. ¶ 11; Mainella Decl. ¶ 6; Jewett Decl. ¶ 12. Waithaka has no common evidence on how long it takes Delivery Partners to make deliveries. Delivery Partners do not clock in or out to record the amount of time they spend providing delivery services. Haubold Decl. ¶ 14.

Amazon has set Service Fees to cover Delivery Partners' expenses, *id.* ¶¶ 14-17, Exs. A-C at ¶ 3, so individual evidence is needed to compare actual and necessary expenses with fees paid before determining liability for unreimbursed and necessary expenses. Nor are expenses determinable on common evidence—not all Delivery Partners incurred the expenses Waithaka alleges. Some may not have owned the cars they used (and they used different types of cars) and some, like Waithaka, used phone data plans that did not result in additional expenses for making deliveries. *Id.* ¶¶ 14-17, Exs. A-C at Ex. A, ¶ II.B ("In performing Services, you may … use: 1. Non-motorized transportation (e.g., walking, cycling); …Vehicles … or public transportation.").[1]

---

[1] Despite Waithaka's Interrogatory Response that he "incurred expenses associated with using [his] personal phone," such as "monthly data charges for my data plan," ROG No. 6, he later testified that he incurred no additional data expenses and his "cellphone cost per month did not go up by virtue" of signing up for Flex. Dep. 26:1-18.

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 5
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## III.   LEGAL STANDARD

"[D]istrict courts … must perform a 'rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (citation omitted). Waithaka's assertion that the Court must accept "the substantive allegations of the complaint as true" (Mot. 8) is wrong. *See, e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("the pleadings alone will not resolve the question of class certification"). Waithaka "must affirmatively demonstrate . . . that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citations omitted). Waithaka "bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). This includes satisfying Rule 23(b)(3)'s heightened burden of showing that "common questions predominate over individual ones" and that a class action is the superior method of adjudication. *Comcast*, 569 U.S. at 34; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." (citation omitted)). He has not done so.

## IV.   ARGUMENT

### A.  Waithaka Fails to Establish Commonality or Predominance.

Plaintiff must first show that each and every Massachusetts Delivery Partner is an employee, not an independent contractor. This requires an individualized inquiry particular to each Delivery Partner. Where, as here, even "after adjudication of [supposedly] class-wide issues, plaintiffs must still introduce a great deal of individualized proof . . . to establish most or all of the elements of their individual claims," the class should not be certified. *Quesada v. Banc of Am. Inv. Servs., Inc.*, 2013 WL 623288, at *5 (N.D. Cal. 2013) (citation omitted).

#### 1.  Plaintiff's Almost Exclusive Reliance on Prong B of the Massachusetts ABC Test is Misplaced Because the FAAAA Preempts Prong B.

Waithaka devotes much space to prematurely arguing that Amazon cannot carry its *merits* burden to establish that he and others operate outside Amazon's usual course of business and,

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION- 6
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   therefore, that Prong B mandates that the Court deem all Delivery Partners to be "employees." But

2   this argument ignores that the FAAAA preempts Prong B in this case. 49 U.S.C. § 14501(b)-(c)

3   (FAAAA preempts laws relating to a price, route, or service of any "motor carrier" or "broker").

4       The First Circuit and Massachusetts Supreme Judicial Court ("SJC") both have held that

5   application of Prong B to the Wage Act would impermissibly require motor carriers or brokers

6   providing delivery services to use employees and not independent contractors. *See Mass. Delivery*

7   *Ass'n v. Healey*, 821 F.3d 187, 191-93 (1st Cir. 2016) (application of Prong B impermissibly

8   "would require a judicial determination of whether a particular service offered by [carrier] fits

9   within its usual course of business" and "would logically have a significant effect on [carrier's]

10  routes and services"); *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 102-03 (2016) (FAAAA

11  preempts Prong B as applied to motor carriers); *see also Schwann v. FedEx Ground Package Sys.,*

12  *Inc.*, 813 F.3d 429 (1st Cir. 2016) (Prong B incompatible with the FAAAA because it required

13  carriers to use employees "to perform first-and-last mile pick-up and delivery services even if those

14  persons could be deemed independent contractors under federal law and the law of many states").

15      Waithaka has alleged that (1) Amazon "dispatch[es] delivery drivers" and (2) Delivery

16  Partners provide delivery services. Mot. 4-7, 12. Based on Waithaka's allegations alone, this case

17  involves a "motor carrier" (himself) and a "broker" (Amazon), so the FAAAA applies. 49 U.S.C.

18  § 13102(2), (14) (defining broker and motor carrier); Haubold Decl. ¶ 20, Ex. D (Amazon Logistics

19  Inc. DOT registration as "carrier" and "broker"). Because Prong B would force the use of

20  employees for motor carrier services, the FAAAA preempts Prong B as applied to his

21  Massachusetts state-law claims. *See Healey*, 821 F.3d at 191-93; *Chambers*, 476 Mass. at 102-03.

22      The Massachusetts SJC has instructed that courts should sever Prong B and apply a

23  modified "AC" test in cases like this one. *Chambers*, 476 Mass. at 103-05. Indeed, multiple cases

24  cited by Waithaka confirm that FAAAA preemption has erased Prong B from the Massachusetts

25  employment test and that *it should not factor into the class certification analysis* in delivery driver

26  cases. *See Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 168-69 (D. Mass. 2019)

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 7
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1 (Prong B preempted, so only Prongs A and C relevant to class certification); *DaSilva v. Border*

2 *Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 397 (D. Mass. 2017) (same); *Vargas v. Spirit Delivery*

3 *& Distrib. Servs., Inc.*, 245 F. Supp. 3d 268, 273 (D. Mass. 2017) (same).

4    Plaintiff initially filed this case in Massachusetts state court. That this case since has been

5 removed and transferred does not change the critical point: *Massachusetts' highest state court* has

6 held that preemption renders the applicable classification test to be an AC test—not an ABC test

7 and certainly not a Prong B-only test. This is not a "federal claim" requiring the application of

8 Ninth Circuit law. *Cf. Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994). Rather, as

9 Waithaka concedes, this case involves a question of "state law," Mot. 2, and the merits will be

10 decided under state law. *See, e.g.*, *AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*, 921 F.3d 282,

11 289 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 1105 (2020) ("federal judges apply state substantive

12 law exactly as a state court would"); *Newton*, 22 F.3d at 1460 (applying traditional choice of law

13 rules for transferred state claim). Thus, Amazon is entitled to raise all defenses to that claim that

14 would be available under Massachusetts law in state court. *Ferens v. John Deere Co.*, 494 U.S.

15 516, 524 (1990) (transfer "should not deprive parties of state-law advantages"). The Supreme

16 Court has held that "whatever rights the parties have acquired under state law should be

17 unaffected" by transfer. *Van Dusen v. Barrack*, 376 U.S. 612, 633 (1964); *id.* at 633-39. So, the

18 Ninth Circuit's recent decision regarding preemption of *California's* Prong B does not apply, *Cal.*

19 *Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021), especially when that court agreed that the

20 Ninth Circuit's narrow view of FAAAA preemption is "contrary to" the First Circuit's, *id.* at 663.

21    Because the FAAAA preempts Prong B of Massachusetts' test, it is irrelevant to the Rule

22 23 inquiry and the Court can and should ignore most of Plaintiff's argument.

23    **2.   Plaintiff Must Prove His Argument That All Delivery Partners Are Employees Is Susceptible to Common Proof, And He Has Not Done So.**

24    Despite preemption, Plaintiff focuses almost exclusively on Prong B. Mot. 10-11. While

25 Plaintiff glosses over his failing commonality arguments under Prongs A and C, the law does not

26 permit him to do so. "The problem with [Waithaka's] argument is that it assumes its own

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 8
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

conclusion." *Schwann v. FedEx Ground Package Sys., Inc.*, 2013 WL 1292432, at *3 (D. Mass. 2013). Even if the Court were to consider Prong B, it should reject Waithaka's attempt to "shortcut the statutory [ABC] test," because "while it has the attraction of expedience, [it] effectively presumes that the drivers [a]re employees. . . . Although plaintiffs' conclusion may ultimately prove correct, it is premature to reach it now without considering the test as a whole." *Id.* (citation omitted). A decision on Prong B would be dispositive as to employee status *only if* Waithaka prevails on that issue. *Id.* Certifying solely based on Prong B thus "would run afoul of the rule against one-way intervention." *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 273 F.R.D. 516, 523 (N.D. Ind. 2010); *id.* at 523-25 (denying certification under Massachusetts ABC test for same reasons). Amazon has a right to demonstrate that it meets all prongs of the ABC test. So, "even if Prong B can be subject to common proof . . . common issues do not predominate over the independent contractor test as a whole because both the first and third prongs require 'individualized factual inquiries'" at the certification phase. *Magalhaes v. Lowe's Home Ctrs., Inc.*, 2014 WL 907675, at *8 (D. Mass. 2014).

Regardless of any merits burden of proof, "a district court must find by a preponderance of the evidence that the plaintiff has established predominance under Rule 23(b)(3)." *Olean*, 993 F.3d at 784. Plaintiff cannot rely exclusively on Prong B for certification, as the inability to raise Prongs A and C would "legally bind members of the proposed class" to forfeit reliance on them "before the class is certified." *Standard Fire*, 568 U.S. at 593. The Court "cannot focus at this stage only on some . . . conditions and ignore others." *Torres v. Wells Fargo Bank, N.A.*, 2019 WL 7169793, at *8 (C.D. Cal. 2019). It must "address[] predominance with respect to each element in turn before deciding whether common questions or individualized inquiries predominate." *Id.*[2]

---

[2] *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016), which Plaintiff relies on to argue that certification can turn solely on Prong B, is unpersuasive and ignores the rule that Rule 23's inquiry requires the court to consider "*all* elements of the plaintiffs' causes of action." *Konik v. Time Warner Cable*, 2010 WL 8471923, at *4 (C.D. Cal. 2010) (emphasis added). Other cases Plaintiff cites for the notion that classes are "especially suitable for certification under the second prong" hold no such thing. *See* Mot. 3 (citing *D'Italia v. Lowe's Home Centers, Inc.*, No. 11-4758-BLS1 (Suffolk Super. Ct. Dec. 12, 2012) (Pl. Ex. 1) and *De Giovanni v. Jani-King Intern., Inc.*, 262 F. R. D. 71, 84-88 (D. Mass. Sept. 21, 2009); both cases held there was common evidence for all three prongs, not that evidence on Prong B was enough). Plaintiff also cites (Mot. 2 n.2) *Massachusetts state court* cases discussing state certification law. These cases are irrelevant because the "Commonwealth's version of Rule 23 is intended to grant parties and judges greater flexibility than its federal counterpart." *Baker v. Lvovskiy*, 2006 WL 2627577, at *3 n.5 (Mass. Super. 2006); *see also Weld v.*

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### a. Plaintiff fails to show commonality and predominance as to Prong B.

In determining whether a contractor performs work "outside the usual course" of the hiring entity's business (M.G.L. ch. 149, § 148B(a)(2)), courts consider "whether the service provided is necessary to the defendant's business or merely incidental to it." *Magalhaes*, 2014 WL 907675, at \*5. This analysis compares (1) the nature of Amazon's business to (2) the nature of the services provided by each Delivery Partner. *Id.*; *Hogan v. InStore Grp., LLC*, 2021 WL 91386, at \*11 (D. Mass. 2021). Waithaka contends, without analysis, that a "defendant's 'usual course of business' will obviously be proven through common evidence and will not vary from one worker to another." Mot. 11. Neither assumption is so obvious, let alone established by Waithaka.

Plaintiff first attempts to demonstrate Amazon's usual course of business by misrepresenting press releases and securities filings. In addition to having been created four years *after* the beginning of the proposed class period, Amazon's 2020 Form 10-K does not even mention deliveries. *See* Pl. Ex. A ("Amazon 10-K"), at 45 ("***Fulfillment costs*** . . . include[e] costs attributable to buying, receiving, inspecting, and warehousing inventories; picking, packaging, and preparing customer orders for shipment[.]"). Waithaka also contends that Amazon "fulfills customer orders by dispatching delivery drivers to deliver orders to its customers." Mot. 4. But the 10-K says: "We fulfill customer orders in a number of ways"; "We offer programs that enable sellers to grow their businesses, sell their products in our stores, and fulfill orders through us." Amazon 10-K, at 3. This says nothing about making deliveries.[3]

Next, Plaintiff inaccurately homogenizes what Delivery Partners do to putatively show that they perform work as part of Amazon's usual course of business. Plaintiff submitted evidence only regarding himself, asking this Court to assume that his own purported individual experiences

---

*Glaxo Wellcome, Inc.*, 434 Mass. 81, 86 n.7 (2001) (Mass. R. Civ. P. 23 "relaxes some of the requirements imposed on plaintiffs under the federal rule"). The federal Rule 23 applies here in asking whether common issues will predominate on the class's state law claims. Most of those state cases do not even mention Prong B in their analysis.

[3] Waithaka also claims that Amazon "considers its competitors to be other companies whose usual course of business is … delivery." Mot. 5-6 (citing Amazon 10-K, at 4). But the cited portion of the 10-K states no such thing. *Id.* (competitive businesses include: "physical, e-commerce, and omnichannel retailers"; media "publishers, producers, and distributors"; "comparison shopping websites"; "information technology services or products"; "manufactur[ing], market[ing], or sell[ing] consumer electronics").

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 10
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

are common to all. That is not the case. Other Delivery Partners did not perform traditional brown box deliveries, or they performed a mix of brown box and food deliveries. Oswalt Decl. ¶ 10; Takacs Decl. ¶ 5; Jewett Decl. ¶ 7. Waithaka himself performed grocery deliveries. Dep. 109:3-11. So did other Delivery Partners. *See* Oswalt Decl. ¶ 10. Others delivered only food items from grocers. *Id.*; Takacs Decl. ¶ 5; Hammond Decl. ¶ 6. The block length and fees for WFM deliveries differ from typical package deliveries, as perishables must be delivered more quickly, *see* Oswalt Decl. ¶ 10; Haubold Dec. ¶ 15, and the former categories allow for tips on top of Service Fees. *See* Haubold Dec. ¶15; Jewett Decl. ¶ 7. Yet Plaintiff does not contend that Amazon's usual course of business is "groceries," nor does he submit any evidence suggesting that Amazon is a grocer. Such differences in businesses preclude class certification, especially where, as here, there has been very little discovery and Plaintiff is relying on bare, speculative assertions. *See Magalhaes*, 2014 WL 907675, at *5 ("installers" for Lowe's failed to prove commonality under Prong B where class members provided "different types of installation services, including flooring, roofing and appliance installation" and the fact finder would have to determine which of those services were part of the company's usual course of business).[4]

### b. *Plaintiff also fails to show commonality or predominance on Prong A.*

In his effort to argue that Prong A also can be decided on common evidence, Waithaka argues that the lone issue is whether Amazon has a contractual right to exercise control (Mot. 13). But his two-sentence discussion ignores that Prong A requires both contractual control *and* control "in fact." M.G.L. ch. 149, § 148B(a)(1). Waithaka fails to present evidence of either type of control.

Even if Waithaka could rely solely on contractual control, his argument cannot be squared with the actual contract, which confirms that Amazon does "not have the right to control the 'manner and means' of how any" Delivery Partner performs services. *Salter v. Quality Carriers, Inc.*, 2021 WL 2333098, at *9 (C.D. Cal. 2021), *appeal pending*; Haubold Decl. ¶¶ 17-19, Exs. A-C at Ex. A, ¶ III.B ("it is for [the Delivery Partner] to decide the means and manner in which to

---

[4] No such differences existed in *James v. Uber Tech. Inc.*, upon which Plaintiff heavily relies, where drivers allegedly all did the exact same thing when they were driving for Uber. 338 F.R.D. 123, 137 (N.D. Cal. 2021).

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 11
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

provide the Services and achieve the results that you have agreed to provide"; Delivery Partners are contractually "free to map out [their] own routes, sequence [their] deliveries and in every other way control the means and manner in which [they] deliver."). This *absence* of mandated contractual control precludes class certification. *See, e.g.*, *Salter*, 2021 WL 2333098, at *9 (denying certification under ABC test after finding that contractual standards of performance were "immensely broad" and did not "actually mandate any specific behavior").

Moreover, Waithaka does not even bother to argue that he can prove control "in fact" on a class-wide basis. *Magalhaes*, 2014 WL 907675, at *4-5 ("[e]ven assuming that each class member signed an identical contract with Lowe's, this does not demonstrate that there are common issues of fact" under Prong A because it requires "a showing that they were free from control as a matter of contract and as a matter of fact"). Indeed, the case Waithaka cites, *DaSilva*, 296 F. Supp. 3d at 400, makes clear that courts must also consider whether there is common evidence of control *in fact*. Plaintiff offers none. Nor can he. For example:

- Waithaka and some Delivery Partners choose to deliver in their own personal vehicle, Oswalt Decl. ¶ 13; ROG No. 3; however, others may borrow vehicles, use public transportation, or deliver via bicycle. *See* Haubold Decl. ¶¶ 17-19, Exs. A-C at Ex. A, ¶ II.B. No version of the TOS requires Delivery Partners to use any particular means of transportation—or any particular car if they do use a vehicle. *See id.*

- While Waithaka claims he strictly followed Amazon's suggested routes, Dep. 142:4-143:18, his mileage records indicate he didn't, Declaration of Peter Nickerson ("Nickerson Decl.") ¶¶ 6-7, and others chose not to do so, Oswalt Decl. ¶ 9; Jewett Decl. ¶ 11.

- Waithaka says he "usually" picked up packages from an Amazon delivery station, ECF No. 97-1 ("Waithaka Decl.") ¶ 5, but he did not always do so and other Delivery Partners performed services without *ever* visiting an Amazon facility, instead getting items from WFM. Dep. 109:3-11; Oswalt Decl. ¶ 10; Jewett Decl. ¶ 7.

These variations show a lack of commonality under Prong A. *Magalhaes* is instructive. Like the contractors here, the installers there had "various degrees of dependence on Lowe's workflow." 2014 WL 907675, at *4. These differences affected Lowe's "level of control" and required "an individualized factual inquiry," precluding any finding of commonality. *Id.*; *Salter*, 2021 WL 2333098, at *9 (denying certification under ABC test where policies "were not strictly or

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 12
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

uniformly enforced and [] the supervision of each driver varied"); *Martinez v. Flower Foods, Inc.*, 2016 WL 10746664, at *11 (C.D. Cal. 2016) (denying certification where "the variations among drivers" evinced "a difference in Defendants' exercise of control"). Just so here.

### c. *Plaintiff fails to show commonality or predominance on Prong C.*

Prong C requires individualized evidence to show whether a worker *actually is engaged* in an independent business. *Schwann*, 2013 WL 1292432, at *3 (Prong C demands "individualized evidence about each driver's history of 'customary' work apart from his or her duties with [the hiring entity]"). Waithaka offers no common evidence, just the unsupported assertion that all Delivery Partners "'wear the hat' of Amazon." Mot. 14. Whatever that may mean, it is not true. One relevant fact for deciding whether any class member is engaged in an independent business includes whether they use other delivery service provider apps while using Amazon Flex. *See James v. Uber*, 338 F.R.D 123, 137-39 (N.D. Cal. 2021) (variations in using "competitors' apps at the same time" defeat Prong C); *Urena v. Earthgrains Distrib., LLC*, 2017 WL 4786106, at *6 (C.D. Cal. 2017) (difference in "extent to which [class members] make deliveries for [other] companies" defeats commonality for independence). Individual evidence is needed on this point.

Waithaka exemplifies this issue. He simultaneously drove for Amazon, Uber, and Lyft—often making Amazon Flex deliveries earlier in the day and then switching to Uber or Lyft. Dep. 84:19-86:23. He could accept rides or blocks from any of the three companies, and it was totally up to him which one to choose. Dep. 120:9-122:7. Indeed, he admitted that he has finished Flex deliveries early and signed onto Uber or Lyft before the end of the estimated Amazon block time—"getting paid both by Amazon and by the ride-share app" for that period of time. Dep. 129:5-18. Based on Waithaka's own data of his Uber and Lyft rides, Waithaka very frequently picked up rides for Uber *while* doing Flex deliveries. Nickerson Decl. ¶ 12.[5] This is not unique to Waithaka. He testified that he saw other cars at Amazon delivery stations that had "the Amazon sticker on it, and they'll also have Uber and Lyft," and other Delivery Partners have confirmed as much. Dep. 125:15-

---

[5] This data contradicts Waithaka's sworn testimony, Dep. 158:20-159:21, which only underscores the individualized nature of this issue, not to mention undermining Waithaka's credibility and, as such, his typicality.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

126:11; *see* Oswalt Decl. ¶ 13 (does work as an "Uber and Lyft driver, a DP, and making deliveries for private clients"). Individual evidence is required for every Delivery Partner as to whether they hold themselves out as independent vendors. *See Magalhaes*, 2014 WL 907675, at *6 (individual issues predominated where "some installers have their own incorporated businesses . . . while others do not"); *Bowerman v. Field Asset Servs., Inc.*, 2014 WL 4676611, at *10-12 (N.D. Cal. 2014) (individual issues predominated where "some [putative class members] ha[d] independent businesses," "d[id] not work full time for [the defendant]," and "contract[ed] with competitors of [the defendant]"); *Narayan*, 285 F.R.D. at 478 (individual evidence needed for "distinct occupation" where some class members provided services through other companies).[6]

Given his multi-faceted rideshare and delivery business, it should come as no surprise that, in seeking funds through the federal Paycheck Protection Program, Plaintiff held himself out as a sole proprietor, Dep. 131:21-133:3, "self-employed," and qualifying as a "small business," Walsh Decl., Ex. B, Loan Records (WAITHAKA001375-1411). He also testified that he probably described his occupation on his tax returns as "businessman," Dep. 137:2-6, and he listed his occupation on his 1040 as "entrepreneur," Walsh Decl. Ex. D, which makes sense given he spent twelve years operating his own "delivery company," Dep. 32:12-33:24, and has provided ridesharing and delivery services for Uber, Lyft, and Amazon Flex over the last five years, ROG No. 7, while also running an "electronic shopping" business, Walsh Decl., Ex. D. *See Hill v. Walmart Inc.*, 2021 WL 342574, at *7 (N.D. Cal. 2021) ("Hill's [tax] deduction[s] . . . [and] work for other companies . . . suggest that she was 'engaged in a distinct occupation or business.'").[7]

In sum, Waithaka has failed to prove commonality or predominance with respect to any prong of the ABC test. And even if he could show that "common questions predominate the threshold question of employee classification," that is not enough. *Guifu Li v. A Perfect Franchise,*

[6] Waithaka worked "for Amazon" (Mot. 8) only 15-30 hours/week and worked 32 hours/week for Uber and 15-20 hours/week for Lyft. ROG Nos. 3-4; *id.* No. 7 (he made more than $50,000 from Uber alone in each of 2016 to 2019).
[7] The *only* case Waithaka cites on Prong C, *Coverall N. Am., Inc. v. Com'r of Div. of Unemp. Assis.*, 447 Mass. 852, 858-59 (2006), is not a class certification case, and it emphasized that the plaintiff's business would end without the defendant. *Id.* That would not apply to Waithaka or other class members. *E.g.*, Jewett Decl. ¶ 5; Tackacs Decl. ¶ 15.

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 14
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  *Inc.*, 2011 WL 4635198, at \*12 (N.D. Cal. 2011); *Maldonado v. Cultural Care, Inc.*, 2021 WL

2  3190890, at \*3 n.6 (D. Mass 2021) ("misclassification, without more," is not a violation that can

3  support class certification). He must still prove that "individual claims . . . also pass the

4  predominance test." *Guifu Li*, 2011 WL 4635198, at \*12; *Olean*, 993 F.3d at 784-85. They do not.

### 3. Individualized Issues Related to Plaintiffs' Substantive Wage-and-Hour Claims Predominate over Any Common Questions.

Waithaka's argument that proper classification of Delivery Partners is the glue keeping

their claims together, Mot. 14, runs headlong into the Ninth Circuit's holding in *Castillo v. Bank*

*of America*. There, the plaintiff sought to certify overtime claims, even though some class

members were "not underpaid, and thus could not have been injured . . . in the first place." 980

F.3d at 732. That question of whether some class members were "ever underpaid . . . goes

to *liability* rather than damages." *Id.* at 731. Thus, the plaintiff failed to "provide a common

method of proof to establish BOA's class-wide liability," and his proposed class failed for lack of

predominance. *Id.* at 732; *see also Harvey v. Centene Mgt. Co.*, 2020 WL 2411510, at \*6 (E.D.

Wash. 2020) (denying certification where "resolving the threshold issue of injury-in-fact" by

"identifying those to whom reimbursement is owed would be . . . a laborious, record-intensive

task"). Indeed, Waithaka's oft-cited *James* case makes clear that common evidence must

predominate *both* classification *and* liability under each individual claim. 338 F.R.D. at 142

(refusing to certify minimum-wage claim because "[d]etermining Uber's liability for wages

cannot be determined on a class-wide basis"). Here, Waithaka offers no "common method of

proof to establish [Amazon's] class-wide liability" on either claim. *Castillo*, 980 F.3d at 732.

#### a. Waithaka fails to show that his expense claim can be determined class-wide.

Waithaka asserts without adequate support that his "expense reimbursement claim is clearly

subject to common proof." Mot. 14. Not so. To establish a reimbursement claim under M.G.L. ch.

149 § 148, each Delivery Partner must show that (1) they incurred expenses; (2) those expenses are

of a kind that would otherwise have been borne by Amazon if the Delivery Partner was an

employee; and (3) the expenses were "necessary." *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 15
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    (2011). Each of these elements requires individualized inquiries.

2         First turning to whether Delivery Partners incurred expenses, Waithaka ignores that the

3    "Service Fees" Amazon pays are "intended to cover . . . any expenses [Delivery Partners] may

4    incur." Haubold Decl. ¶¶ 17-19, Exs. A-C at ¶ 3. If Amazon had to pay expenses, "Amazon would

5    offer lower Services Fees." *Id.* As such, *each* Delivery Partner must prove that they incurred

6    necessary expenses *that exceeded* the expenses Amazon already included in its fee calculation.

7    Like the New Hampshire law discussed in *Gennell v. FedEx Corp.*, nothing in Massachusetts law

8    purports to "require[] an employer to distinguish between" labor and expenses "when

9    compensating workers." 2014 WL 1091148, at *6 n.16 (D.N.H. 2014)—both laws are *unlike* the

10   California law discussed in *Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889 (Cal. 2007),

11   which requires apportionment of compensation to determine amounts "paid for labor" and amounts

12   reimbursing "business expenses." *Id.* at 891.

13        Determining what expenses (if any) were incurred is not a simple inquiry. Waithaka's

14   mileage records illustrate how individualized issues would predominate. Waithaka relies on his own

15   mileage records, but those records are unreliable as he admitted in his deposition testimony that he

16   used the same app to track his Uber and Lyft drives, and he recorded some of the mileage driving

17   for Uber and Lyft as Amazon Flex miles. Dep. 188:19-189:3, 197:4-23. Moreover, it appears that

18   Waithaka frequently picked up rideshare fares *while also making Flex deliveries*, Nickerson Decl.

19   ¶ 12, so there is a significant individualized question regarding whether he has attributed duplicate

20   miles to Amazon Flex and his other "gigs" and which miles are attributable to which entity.

21   Moreover, Waithaka conceded that many of the recorded miles in the McCarty Declaration are for

22   his commute home after he completed his Flex work, Dep. 190:18-191:11 ("would have to look into

23   whatever records I have" to see if I recorded commute home in miles); Dep. 194:16-195:17

24   (identifying recorded miles as "probably a trip home"), which is not reimbursable mileage (or

25   compensable time) even if he was an employee. *See* 454 Mass. Reg. § 27.04(4)(a) ("Ordinary travel

26   time between home and work is not compensable working time.").

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 16
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Moreover, not all Delivery Partners incurred the expenses alleged by Waithaka. For

2    example, some may borrow cars or use bicycles to make deliveries, and thus don't have vehicle-

3    related expenses. *See* Haubold Decl. ¶¶ 17-19, Exs. A-C at Ex. A, ¶ II.B. Without supporting

4    evidence, Waithaka also alleged that he incurred cell phone expenses. But depending on their cell

5    plan, some class members—*including Waithaka*—do not incur any additional phone charges from

6    using the Flex app. Waithaka had an unlimited data plan before joining Flex and he used that plan

7    for Flex at no additional expense. Dep. 25:21-26:18. Waithaka likewise alleged that he incurred

8    insurance expenses—but while some class members may have incurred additional insurance

9    expenses from driving for Flex, Waithaka admitted in his deposition that he did not. In fact, he

10   admitted he did not notify his insurance carrier that he uses his car for business, so he paid the same

11   amount as if he never signed up for Flex. Dep. 237:1-21. A Delivery Partner's car or data plan or

12   other expenses cannot be resolved on common evidence, as Waithaka's own testimony illustrates.

13   The foregoing makes clear that there is no uniform way to determine the type or amount of

14   expenses for every Delivery Partner—the fact finder will need receipts and testimony from every

15   putative class member. Further complicating the determination of mileage or vehicle expenses is

16   that it was left to each Delivery Partner to decide for themselves whether to follow Amazon's

17   suggested route,[8] Haubold Decl. ¶¶ 17-19, Exs. A-C at Ex. A, ¶ III.B; *see* Oswalt Decl. ¶ 9, so a

18   determination of whether expenses exceeded the threshold built into the Service Fee will vary

19   significantly for each delivery block. Also complicating the analysis is the variation in actual

20   expenses incurred. To illustrate, Waithaka drove a 2010 Prius and later a 2016 Prius, with the most

21   efficient miles per gallon, making the IRS mileage rate he uses (Dep. 98:6-21, 164:20-23) unduly

22   high. *See, e.g.*, John Voelcker, *Taking Advantage Of Your IRS Mileage: Hybrid Cars Can Help*,

23

---

24   [8] An employer (which Amazon is not here) need not use the IRS rate to calculate expense reimbursement (as Waithaka
     presumes). Rather, the employer can use alternative methods that reflect "reasonable approximation of employee

25   vehicle expenses," *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721-22 (E.D. Mo. 2015)—which will differ
     for each Delivery Driver. Whether the non-IRS method and amount of reimbursement adequately covered actual

26   mileage and car expenses is a "case-by-case analysis" inappropriate for class certification. *Ruiz v. Affinity Logistics
     Corp.*, 2009 WL 648973, at *8 (S.D. Cal. 2009).

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 17
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  GREEN CAR REPORTS (Apr. 11, 2011), https://tinyurl.com/25w65ac4 (noting actual expenses of

2  driving Prius are far less than IRS reimbursement rate). Depending on the make, model, and year,

3  each vehicle used by a Delivery Partner will cost more or less to operate and maintain. Dep. 98:18-

4  21 (what vehicle a Delivery Partner uses is "within your discretion").

5       Further, Waithaka has made no attempt to show it is even possible to prove with class-wide

6  evidence that all Delivery Partners' expenditures were incurred in direct consequence of the

7  individual's use of the Flex app. Waithaka would have to show, for example, that each Delivery

8  Partner purchased a cell phone—a ubiquitous personal device—for the express purpose of using

9  the Flex app. (He did not do so. Dep. 24:16-26:18.)[9] Likewise, in addition to regularly switching

10 between other crowd-sourced platforms like Uber, Lyft, and GrubHub, Delivery Partners engage

11 in personal errands while logged onto the Flex app, to varying degrees. Dep. 128:9-129:18 (has

12 signed onto Uber or Lyft during block), 212:3-214:5 (stopped for food or gas during blocks;

13 doesn't know if others take breaks). Waithaka's claim for "insurance" reimbursement is similarly

14 problematic. It requires probing into the type of insurance involved, when it was purchased (*i.e.*,

15 before or after participating in the Flex program), each Delivery Partner's reason for purchasing

16 it, and whether it needs to be apportioned with other hiring entities like Uber and Lyft and, if so,

17 the proper allocation. *Wilson v. La Jolla Grp.*, 61 Cal. App. 5th 897, 919 (2021) (denying

18 certification of reimbursement claims where no common evidence that LJG "knew or should have

19 known of any specific expenditures as a direct consequence of their work for LJG"). The record

20 already confirms that individual inquiries are required in order to determine whether and to what

21 extent any expenditures are attributable to services for Amazon or another entity. *Id.*

22      The third element of expense claims, whether each expense was "necessary," likewise is

23 inherently individualized. "Necessary" depends on contextual reasonableness of each employee's

24

25 [9] While the Court need not wade into the issue on this Motion, it is Amazon's position that Massachusetts' statutory framework does not mandate reimbursement for this type of expense. *See* 454 C.M.R. 27.00, *et seq.* (stating that travel

26 expenses, but not other expenses, must be reimbursed under certain circumstances); M.G.L. ch. 149, § 148 (including no express requirement that any expenses be reimbursed).

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 18
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

choices—an invariably fact-intensive question. *Harvey*, 2020 WL 2411510, at *6 (denying certification where "determining whether excess charges were improper necessitate[d] analysis of each case's specific facts"). While some drivers may choose to use expensive cars and phones, select models with poor gas mileage, pay for premium gas, or replace their vehicles and phones frequently, others make more economical choices. Dep. 98:6-21, 106:11-17 (uses Prius; others "drive all kinds of cars"). The Court would have to engage in "a worker-by-worker, highly individual analysis" to determine whether each expense was necessary. *Guifu Li*, 2011 WL 4635198, at *14; *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1077 (9th Cir. 2020) (employer need not "indemnify unnecessary extra automobile expenses that are incurred based on the choice of car and fuel"); *Tokoshima v. Pep Boys-Manny Moe & Jack of Cal.*, 2014 WL 1677979, at *10 (N.D. Cal. 2014) (individualized inquiries needed for "whether the claimed expenses were 'necessary'").

Simply put, there is no common evidence that can establish the required elements of Waithaka's expense reimbursement claim for the class and no methodology for sorting out the Delivery Partners who did not incur reimbursable expenses attributable to Amazon. *Harvey*, 2020 WL 2411510, at *6; *Castillo*, 980 F.3d at 730. The Court should deny certification of this claim.

### b. Waithaka fails to show his minimum wage claim can be decided class wide.

Waithaka's contention that his minimum wage claim "can be proven through common evidence, namely a review of drivers' pay records," (Mot. 16) is wrong for several reasons.

First, Waithaka offers no common evidence that could prove how much time individuals worked. Delivery Partners are paid a flat Service Fee per block. But Waithaka acknowledged that "quite often," he "completed a block before the estimated amount of time," such as finishing a 3-hour block in 2 hours, and Amazon did not reduce his pay for the block. Dep. 127:11-128:13; 188:1-14 (finishing 3-hour block in 2 hours increases hourly rate from $18 to $27); *see* Mainella Decl. ¶ 6 (usually completes more quickly than block time); Jewett Decl. ¶ 12 (same).[10] Given that pay

---

[10] Even if there were instances where it took Waithaka longer than the block time, working beyond a scheduled block does not establish liability for a minimum wage claim. Further, Delivery Partners can request additional fees if they believe Amazon caused delays that resulted in deliveries exceeding their anticipated block hours. Dep. 156:10-12 (Waithaka "received adjustment pay in the past"). Whether any Delivery Partner sought and received these additional,

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 19
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   records reflect the block schedule rather than the actual time worked, pay records are not a common

2   way to determine how much time Delivery Partners actually performed services in a workweek.

3   Further complicating reliance on scheduled blocks as a proxy for actual hours worked, Waithaka

4   admitted that even for a morning 3-hour block, Delivery Partners can deliver any time before 9:00

5   pm that night, Dep. 158:8-18, so a Delivery Partner could take a long break or pick up Uber and Lyft

6   fares while Amazon packages are in the trunk, Dep. 158:20-160:3, none of which could be

7   compensable time for Amazon—further complicating the hours worked inquiry.

8       The above demonstrates that, for the minimum wage claim, the Court would have to conduct

9   individual mini-trials just to determine each Delivery Partner's actual work hours and, in turn, average

10  hourly pay, in each week, over a period of years. *See, e.g.*, *Stallsmith v. Linder Psychiatric Grp.*, 2016

11  WL 279271, at *2 (E.D. Cal. 2016) (no certification where "each employee was paid different hourly

12  rates, again requiring an individuated analysis to determine whether minimum wage was paid"); *Soles*

13  *v. Zartman Const., Inc.*, 2014 WL 3557197, at *10 (M.D. Pa. 2014) (no predominance where each

14  plaintiff had to "show as a factual matter" how many unrecorded hours they worked).[11]

15      Waithaka's minimum wage theory raises other individual issues. Waithaka does not dispute

16  that Service Fees easily exceed the minimum wage when computed based on block hours. *E.g.*, Dep.

17  188:1-14. Instead, his minimum wage claim is based on the theory that *some* Delivery Partners

18  received less than the minimum wage in *some* workweeks after accounting for alleged expenses: "gas,

19  car maintenance, car wear and tear, insurance, and phone data charges." Mot. 14-15; *see* Dkt. 97-1

20  ¶ 10. But as explained above, determining reimbursable expenses is even more individualized as a

21

22  discretionary fees is yet another necessary individualized inquiry, and another reason why certification is improper.
    *See Raposo v. Garelick Farms, LLC*, 293 F.R.D. 52, 57 (D. Mass. 2013) ("Plaintiffs acknowledge that some drivers
23  who worked through breaks were subsequently compensated for that time after notifying their supervisor. As a result,
    whether a driver was compensated for working through a meal break depended on decisions made by his individual
24  supervisor . . . and the proposed class cannot satisfy the commonality requirement.").
    [11] Massachusetts courts generally look to interpretations of the FLSA when interpreting Massachusetts wage laws,
25  *Vitali v. Reit Mgmt. & Research, LLC*, 36 N.E.3d 64, 69 (Mass. App. Ct. 2015), so an averaging approach applies to
    minimum wage claims in both. *See Hamilton v. Partners Healthcare Sys.*, 209 F. Supp. 3d 379, 394 (D. Mass. 2016)
26  (allowing motion to dismiss; "[a]lthough Plaintiffs allege that they were not specifically compensated for certain time
    periods, there is no allegation that their average hourly wage per week fell below that minimum amount.").

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 20
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

fact finder would need to analyze, for *each* workweek, whether and in what amount that Delivery Partner incurred necessary expenses required to be reimbursed under Massachusetts law. Waithaka has not presented any common evidence or method that would allow the Court to do that.

As noted above, Waithaka's only effort to demonstrate a minimum wage violation is his counsel's declaration, but it falls far short. The declaration depends upon inaccurate Amazon Flex mileage claims (by including Uber or Lyft mileage and counting mileage for his trips to and from his house). Even when using this inflated mileage, the McCarty declaration concedes that Waithaka had ***no*** minimum wage claim in 7 of the first 15 weeks he participated in Flex. McCarty Decl. ¶ 5; *id.* Ex. C. And when one excludes the inflated miles, Waithaka's "hourly" pay exceeds Plaintiff's counsel's miscalculations and results in *no* minimum wage claim for any of the 15 weeks. Nickerson Decl. ¶¶ 10-11. Under these circumstances, where Waithaka himself still hasn't proven a single week of a minimum wage violation, he can't even establish his own standing and typicality, let alone common evidence about other putative class members. *Maldonado*, 2021 WL 3190890, at *4 (certification denied where named plaintiffs have no minimum wage claim and thus no standing).

Based on Waithaka's own experience, as well as Amazon's well-above minimum wage block pay, there likely are many other Delivery Partners *who have no minimum wage claim* even under the erroneous theory alleged in the Complaint. *See Olean*, 993 F.3d at 791-92 (plaintiff must prove the class does not sweep in non-de minimis uninjured class members); Hammond Decl. ¶¶ 9-10; Mainella Decl. ¶ 5 (usually takes blocks that will make $30 an hour). This absence of class-wide proof of injury goes to *liability*. And where class members cannot prove liability on common evidence, that defeats predominance. *Id.* "That the proposed class would inevitably contain many members who never suffered the alleged primary injury is itself fatal to Plaintiff's motion." *Harvey*, 2020 WL 2411510, at *6; *see Castillo*, 980 F.3d at 731-32 (cannot certify class where many class members would have "no claim for compensation"). The Supreme Court recently held that absent class members who have not been harmed do not have standing to join a class action, raising serious questions against certification here. *TransUnion*, 141 S. Ct. at 2208. Because Delivery Partners' effective hourly rates

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 21
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

and alleged expenses are individualized, Waithaka's minimum wage claim cannot be certified.

**4.    The Court Should Also Deny Plaintiff's Motion Because He Fails to Identify a Valid Model for Establishing Alleged Damages on a Class-wide Basis.**

While in some cases "the need for individualized findings as to the amount of damages does not defeat class certification," *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016), the "Ninth Circuit has explained that it 'applied this understanding in cases where there existed a *common methodology* for calculating damages.'" *Converse v. Vizio, Inc.*, 2020 WL 2922490, at *4 (W.D. Wash. 2020) (emphasis added). Far from proposing "a reliable method of calculating class-wide damages," Waithaka has "advanced no damages model at all." *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *6 (C.D. Cal. 2014) (citation omitted). This head-in-the-sand approach to damages (Mot. 20-21) is further grounds to deny class certification. *Converse*, 2020 WL 2922490, at *4 (denying class certification where plaintiff failed to provide methodology for calculating damages); *see also Harvey*, 2020 WL 2411510, at *7 ("[T]hough a class action would no doubt resolve some class-wide issues in a single proceeding, it would then entail thousands of individualized determinations of whether, and if so to what extent, a member was injured by [Defendant's conduct]. Without a damages model, the proposed class fails Rule 23(b)(3)'s predominance requirement") (citing *Comcast*, 569 U.S. at 34).[12]

**B.    Plaintiff Has Not Demonstrated that His Claims Are Typical or that He Is an Adequate Class Representative.**

Rule 23 requires the named plaintiff to "show that" his "claims are typical of the class"—*i.e.*, that he has suffered "the same or similar injury"—and that his interests are aligned with other class members. *Ellis*, 657 F.3d at 984-85. Waithaka has not made either showing given his unique experiences, failure to establish his own expense and minimum wage claims, and admitted lack of knowledge of other Delivery Partners' experiences. Indeed, Waithaka testified that he didn't even know "the names of anybody" at any delivery station, Dep. 146:3-10, had no relationship with

---

[12] Waithaka cites two cases noting the "amount of damages" varying among class members does not defeat certification, Mot. 21 (citing *Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 364 (2008); *Weld*, 434 Mass. at 92), but that's beside the point. Even if the *amount* of damages may differ, a common *model* for calculating damages is required—and is lacking here. *Comcast*, 569 U.S. at 34. Moreover, Waithaka's cases were decided before *Comcast* and don't interpret Federal Rule 23, but Massachusetts' more lenient certification standard. *Weld*, 434 Mass. at 86 n.7.

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 22
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    other Delivery Partners, and "cannot speak for what other people do." Dep. 126:7-11.

2        And Waithaka's deposition revealed a host of credibility issues—including neglecting to

3    indicate to his insurance that his car was used for business, Dep. 237:15-21; not being truthful on

4    his LinkedIn about the title or nature of his previous jobs, Dep. 44:10-45:19; testifying under oath

5    that he never picked up Uber and Lyft fares during an Amazon Flex block, Dep. 158:20-159:7;

6    Nickerson Decl. ¶ 12; and omitting relevant facts from his verified Interrogatory Responses, such

7    as failing to disclose that he had sources of business income other than Uber, Lyft, or Flex, Walsh

8    Decl. Ex. D, and that he took business loans, in which he admitted he was "self-employed" and

9    qualified as a "small business," Walsh Decl., Ex. B, Loan Records (WAITHAKA001375-1411)—

10   which also defeat typicality and adequacy. *See Jammeh v. HNN Assocs., LLC*, 2020 WL 5407864,

11   at *14 n.17 (W.D. Wash. 2020) (credibility relevant to both prongs). A plaintiff who puts his

12   credibility into question is not an adequate class representative. *Darvin v. Int'l Harvester Co.*, 610

13   F. Supp. 255, 257 (S.D.N.Y. 1985). Credibility concerns may undercut independent contractors'

14   claims of employee status. *See Lawson v. Grubhub, Inc.*, 302 F. Supp. 3d 1071, 1082 (N.D. Cal.

15   2018) (emphasizing plaintiff's lack of credibility before holding he was independent contractor).

16       Plaintiff is also atypical of the class he seeks to represent for all the reasons discussed above

17   regarding commonality. "[T]ypicality and commonality are generally considered together," *Ass'n

18   of Women with Disabilities v. Mulubrhan*, 2006 WL 8455500, at *5 (S.D. Cal. 2006), because

19   varying claims or defenses between the named plaintiff and class members defeat typicality, *Ellis*,

20   657 F.3d at 984-85. The varying strength of putative class members' claims under the ABC test

21   and on the merits of minimum wage and expense reimbursements also defeats typicality by making

22   Waithaka's claims stronger or weaker than other claims members.

### C. Plaintiff Ignores the Manageability Problems That Would Deny Amazon the Right to Present Its Individualized Defenses—Defeating Superiority.

24       In assessing superiority, the Court must consider "the likely difficulties in managing [the]

25   class action." Fed. R. Civ. P. 23(b)(3)(D); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

26   1301, 1304 (9th Cir. 1990). Manageability "encompasses the whole range of practical problems

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 23
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle &*

2    *Jacquelin*, 417 U.S. 156, 164 (1974); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th

3    Cir. 2001) (not superior "when the complexities of class action treatment outweigh the benefits").

4           There are a host of issues that would require mini-trials, including whether each Delivery

5    Partner is an employee *at all*; whether each Delivery Partner has a claim for minimum wage or expense

6    reimbursement *at all*; and what each Delivery Partner's damages would be. *Six Mexican Workers*, 904

7    F.2d at 1304 ("This 'manageability' requirement includes consideration of the potential difficulties in

8    notifying class members of the suit, calculation of individual damages, and distribution of damages.");

9    *Zinser*, 253 F.3d at 1192 (no superiority where "each class member has to litigate numerous and

10   substantial separate issues to establish his or her right to recover individually"); *Harris v. Vector Mktg.*

11   *Corp.*, 753 F. Supp. 2d 996, 1022-23 (N.D. Cal. 2010) ("substantial variance as to what kind of

12   expenses were even incurred" defeats manageability).

13          Waithaka has failed to present *any* explanation as to how these issues could be litigated in a

14   class proceeding. He has not offered a valid damages model, nor has he submitted a trial plan.

15   *Zinser*, 253 F.3d at 1190 (affirming denial of certification when "there was no manageable trial

16   plan adequate to deal with individualized issues"); *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429,

17   441 (C.D. Cal. 2007). Certifying a class here would eviscerate Amazon's ability to litigate its

18   defenses with respect to each Delivery Partner. *Dukes*, 564 U.S. at 367 ("a class cannot be certified

19   on the premise that [a defendant] will not be entitled to litigate its . . . defenses to individual claims");

20   *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due

21   process right to raise individual challenges and defenses . . . and a class action cannot be certified in

22   a way that eviscerates this right or masks individual issues."); *Mendoza v. Home Depot, U.S.A. Inc.*,

23   2010 WL 424679, *10 (C.D. Cal. 2010) (class action not superior "particularly in light of the fact that

24   Home Depot should be entitled to raise affirmative defenses to individual plaintiffs' claims").

25                               **V.    CONCLUSION**

26          For these reasons, the Court should deny Waithaka's motion for class certification.

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 24
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1
2
Dated:  July 30, 2021

Respectfully submitted,

3
By: _s/Ryan Redekopp_
Ryan D. Redekopp, WSBA #36853
4
K&L GATES LLP
925 Fourth Avenue, Suite 2900
5
Seattle, WA  98104-1158
6
Telephone:  (206) 623-7580
Fax:  (206) 623-7022
7
Email: ryan.redekopp@klgates.com

8
By: _s/James P. Walsh_
Richard G. Rosenblatt (_Pro Hac Vice_)
9
James P. Walsh, Jr. (_Pro Hac Vice_)
10
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
11
Second Floor
Princeton, NJ  08540-6241
12
Telephone:  (609) 919-6600
Fax:  (609) 919-6701
13
Email: richard.rosenblatt@morganlewis.com
Email: james.walsh@morganlewis.com
14

15
_Attorneys for Defendants_
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' OPPOSITION TO MOTION
FOR CLASS CERTIFICATION- 25
CASE NO. 2:19-CV-01320-RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that on July 30, 2021, I caused to be electronically filed the foregoing

4

**DEFENDANTS' OPPOSITION TO PLAINTIFF BERNARD WAITHAKA'S MOTION**

5

**FOR CLASS CERTIFICATION** with the Clerk of Court using the CM/ECF system, which will

6

automatically send email notification of such filing to the registered attorneys of record.

7

8

By: *s/James P. Walsh, Jr.*
James P. Walsh, Jr. (*Pro Hac Vice*)

9

MORGAN, LEWIS & BOCKIUS LLP

10

502 Carnegie Center
Second Floor

11

Princeton, NJ  08540-6241
Telephone:  (609) 919-6600

12

Fax:  (609) 919-6701
Email: james.walsh@morganlewis.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022