THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNARD WAITHAKA, *et al.*,

                Plaintiffs,

    v.

AMAZON, INC., *et al.*,

                Defendants.

CASE NO. C19-1320-JCC

ORDER

This matter comes before the Court on Plaintiff Bernard Waithaka's second motion for class certification (Dkt. No. 172). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I.  BACKGROUND

Plaintiff is a delivery driver for Defendants' Amazon Flex program. (Dkt. No. 172-1 at 1.) Under the program, drivers like Plaintiff deliver products from Defendants' facilities to end customers. (Dkt. No. 178-1 at 2.) These products vary from groceries to more traditional "brown box" deliveries. (*Id.* at 2–3.) Defendants advertise timely and efficient delivery, which depends, in part, on the delivery drivers here. (*See* Dkt. Nos. 172-7 at 2–3, 172-3 at 4.)

Delivery drivers use personal vehicles (with minimal requirements from Defendants). (Dkt. No. 172-14 at 11.) Drivers also use a phone-based application to sign up for shifts, confirm

that products have been picked up, receive suggested driving routes, and confirm that products have been delivered. (Dkt. Nos. 178-1 at 3, 172-14 at 9–10, 178-9 at 3.) The Terms of Service ("TOS") that govern Amazon Flex have varied since the program's creation in 2014, (Dkt. No. 178-1 at 4), but two provisions relevant to the allegations here have not. First, Defendants have always classified delivery drivers as independent contractors, not employees. (*See, e.g.,* Dkt. Nos. 178-1 at 7, 179-14 at 3, 179-16 at 2.) Second, pay is governed exclusively by the "Service Fees" provision. (*See, e.g.,* Dkt. Nos. 178-1 at 23, 179-14 at 3, 179-16 at 3.) The TOS specify these fees are the entirety of drivers' pay and are meant to cover their expenses. (*See id.*)

The TOS also explain the work and pay. Drivers sign up for "delivery blocks," which are the time Defendants estimate it will take to complete delivery of all products a driver picks up. (Dkt. Nos. 179-16 at 2, 178-1 at 3.) For example, driver Brad Oswalt signed up for a three-hour block in June 2021. (Dkt. No 178-6 at 4.) The pay for a block is established when a driver signs up and is based on an algorithm that takes into account, among other factors, potential expenses and the supply of drivers. (Dkt. No. 172-14 at 23–26.) A driver whose actual delivery time is under the block estimate is paid the full amount. (Dkt. No. 178-1 at 3.) Oswalt completed his three-hour delivery block in one hour and was still paid the $96 he signed up for. (Dkt. No. 178-6 at 4) (*see also* Dkt. No. 179-1 at 23–24 (Plaintiff explaining he often finishes blocks early)). It is undisputed that actual delivery times are usually less than the estimated blocks. (*See* Dkt. No. 178-10 at 43–44.)[1] Drivers may sign up for a block a week in advance, (Dkt. No. 179-11 at 10), and may cancel up to 45 minutes before a block begins. If a driver repeatedly cancels with less than 45 minutes' notice, they may be penalized or terminated for violating Defendants' Service Standards. (*See, e.g.,* Dkt. No. 178-1 at 25, 32.)

A delivery block is different than a "delivery window," the timeframe during which Defendants expect drivers to deliver products. (*Id.* at 32.) The delivery window varies by

---

[1] Drivers may request additional compensation if some "unforeseen circumstance" results in more working time than the estimated block. (Dkt. No. 168-1 at 3.)

product: perishable groceries may have a two-hour window, while the window for consumer goods in brown boxes is longer. (Dkt. Nos. 179-11 at 3–4, 178-1 at 3–4, 178-6 at 3.) Most products have a longer window that simply requires delivery by 9 P.M. on the same day the product is picked up. (Dkt. Nos. 178-1 at 3, 179-11 at 3.)[2] It is undisputed that actual delivery times are usually within the acceptable window. (*See* Dkt. No. 178-10 at 43.) Again, drivers are not paid based on windows; they are paid based on blocks. Defendants paid Oswalt $96 for his three-hour block regardless of when he actually delivered the last product. (*See* Dkt. No. 178-6 at 4.) Drivers' "Delivery Quality" and "Standing," however, are tied to the window. (Dkt. Nos. 178-1 at 32, 172-5 at 9–10.) Drivers who repeatedly fail to meet the expectation—usually, to deliver all products by 9 P.M.—may be terminated, and Defendants retain discretion over all Service Standard violations. (*See* Dkt. No. 178-1 at 25, 32.)

Both parties submit that the length of delivery blocks and windows create flexibility. (*See* Dkt. Nos. 172 at 19–20, 178 at 13.) They disagree on what that means for Plaintiff's employment claims. According to Plaintiff, drivers are unpaid for some working time during the delivery window but outside of the delivery block. (Dkt. No. 172 at 19.) He submits working time can and should be measured from pickup to delivery. (*Id.*) But according to Defendants, drivers spend time between pickup and delivery performing personal tasks or working for other companies, not for Defendants. (Dkt. No. 178 at 33–34.) They submit that the time between pickup and delivery does not represent drivers' working hours because of this unaccounted "gap time." (*Id.*)

Plaintiff originally brought suit in Massachusetts state court in 2018 before the case was removed and then transferred to this District. (Dkt. Nos. 1 at 1, 1-1 at 3, 59 at 22.) The complaint brings three employment claims under state law. Count I alleges that Defendants misclassified

---

[2] Prime Now and Whole Foods products require a tighter window, (Dkt. No. 179-11 at 4), though usually pay better. (*See* Dkt. No. 178-7 at 2.) Amazon Logistics windows for brown box deliveries are open until 9 P.M., (Dkt. No. 179-11 at 3), and constitute the majority of the deliveries drivers make. (Dkt. No. 178-10 at 18.)

Plaintiff as an independent contractor. (Dkt. No. 1-1 at 8) (citing Mass. Gen. Laws ch. 149, § 148B). Count II alleges that Plaintiff is owed unpaid business expenses under the Massachusetts Wage Act. (Dkt. No. 1-1 at 9) (citing Mass. Gen. Laws ch. 149, § 148). These expenses include the cost of his phone to use the Amazon Flex application and the mileage on his personal vehicle. (Dkt. No. 1-1 at 3.) Count III alleges that Defendants did not pay Plaintiff the state minimum wage under the Massachusetts Minimum Wage Law. (*Id.* at 9) (citing Mass. Gen. Laws ch. 151, §§ 1, 7).

This case has been stayed pending appeals in various others, including one before this Court. (Dkt. Nos. 91 at 16, 153 at 3.) The Court lifted the stay earlier this year, (Dkt. No. 166 at 1), and Plaintiff moved for class certification under Federal Rule of Civil Procedure 23. (Dkt. No. 172 at 9.)[3] Plaintiff also requests that he and his counsel be appointed class representatives. (*Id.* at 21.) Defendants oppose certification, primarily on the grounds that there is insufficient commonality between class members and that individual issues will predominate over common ones. (Dkt. No. 178 at 17–35.) They also contest the validity of Plaintiff's business expense claim under the Wage Act. (*Id.* at 28.)

## II. DISCUSSION

To certify a class under Rule 23, the Court must consider whether a class action is an appropriate vehicle to redress the underlying claims. It must conduct a "rigorous analysis" of the Plaintiff's proposed class, the evidence that will be offered on the merits, and the individual issues that could derail collective litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, these considerations all require some inspection of the claims and their merits. *Id.* If the Court seeks to assess whether "common answers" will resolve the litigation, *id.* at 350, then it must be confident that the answers to the questions posed by the claims are legally valid.

---

[3] Defendants did not renew a motion to compel arbitration, (*see* Dkt. No. 171), nor has there been a motion to dismiss.

To understand the merits of Plaintiff's state law claims, the Court therefore reviews the standards for the claims before turning to class certification.

### A.    Legal Standard for Massachusetts Employment Claims

#### 1.    Relationship Between the Claims

Plaintiff's misclassification, Wage Act, and Minimum Wage Law claims are interconnected. With respect to Plaintiff's misclassification claim, under Massachusetts law, a worker is presumed an employee—not an independent contractor—unless three factors are met (the "ABC test"). Mass. Gen. Laws ch. 149, § 148B(a). First (A), the employer must lack control over the work itself, both in contract and in fact. *Id.* § 148B(a)(1). Second (B), the work must be outside of the employer's usual course of business. *Id.* § 148B(a)(2). And third (C), the work must be the sort that the worker usually performs as their trade. *Id.* § 148B(a)(3). It is a defendant employer's burden to show that all three prongs of the ABC test are met to defeat a misclassification claim. *Chambers v. RDI Logistics, Inc.*, 65 N.E.3d 1, 8 (Mass. 2016). Conversely, a plaintiff employee need only show that one factor is not met. *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 165 (D. Mass. 2019). Plaintiff here claims (in Count I) that he and his proposed class can demonstrate that all three factors are absent but focuses on prong B. (Dkt. No. 172 at 10–11.)[4] In other words, he argues that Amazon Flex drivers complete

---

[4] Defendants argue that Massachusetts's prong B is preempted in this case by the Federal Aviation Administration Authorization Act ("FAAAA"), citing First Circuit and Massachusetts case law. (Dkt. No. 178 at 18) (citing *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429 (1st Cir. 2016), *Chambers*, 65 N.E.3d 1). Those courts held that prong B was preempted because of significant, although indirect, effects on motor carriers' operations, which frequently rely on independent contractors. *Schwann*, 813 F.3d at 429, *Chambers*, 65 N.E.3d at 9. Plaintiff does not dispute that Defendants are motor carriers for the purposes of this litigation, but he submits that preemption is a matter of federal law and that this Court is bound by contrary Ninth Circuit precedent. (Dkt. No. 181 at 7–9) (citing *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021)).

The Court is more persuaded by Plaintiff's argument. Preemption is always a federal question. *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 388 (1986); *see also Insolvency Srvs. Grp., Inc. v. Fed. Express Corp*, 2014 WL 12613262, slip op. at 2 (C.D. Cal. 2014)

the crucial last-mile in the usual course of Amazon's order, fulfillment, and delivery business. (Dkt. No. 1-1 at 6–7.)

But even if Plaintiff could show that prong B is absent, that showing alone would not establish liability. Massachusetts General Law § 150—which provides a private cause of action for misclassification—also requires the misclassified employee to suffer a harm ("damages") to recover. Mass. Gen. Laws ch. 149, § 150. In the alternative, § 148B provides a cause of action for misclassification combined with another employment violation. *Id.* § 148B(d). Thus, Plaintiff and his proposed class must be able to establish liability on either (or both) his Wage Act (Count II) or Minimum Wage Law (Count III) claims to succeed on his misclassification claim (Count I) in this litigation. *See Hoffman v. Thras.io Inc.*, 538 F. Supp. 3d 196, 202 (D. Mass. 2021).

The Minimum Wage Law sets a floor for wages. Mass. Gen. Laws ch. 151, § 1. Currently, the statute sets that minimum at $15 per hour, under which a wage is presumed "oppressive and unreasonable." *Id.* Thus, the minimum wage requirement is a function of payment and time. The statute itself does not define what constitutes "wages." *See generally id.* § 2. The Commissioner of the Department of Labor Standards is tasked with setting regulations to enforce and define the state minimum wage. *Id.* § 3(4). In terms of time, compensable hours do not include commute time, 454 Mass. Code Regs. 27.04(4)(a), but obviously include "working time:" time spent on duty or at a location prescribed by their employer. *Id.* at 27.02. It

---

(holding that a district court may look to state courts on state law questions, but must follow Ninth Circuit precedent on preemption questions). A transferee court like the Court here must apply the federal law of the circuit in which it sits. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994).

In *Cal. Trucking Ass'n*, the Ninth Circuit found that the FAAAA does not preempt prong B of the ABC test. 996 F.3d at 658–63 (explaining that generally applicable laws may significantly impact motor carriers, but that alone does not mean they "relate to" the "rates, routes, or services" of motor carriers and their consumers). In so finding, it noted that the Massachusetts ABC test is identical to the California ABC test at issue there. *Id.* at 663. Therefore, under this circuit's precedent, prong B is not preempted by the FAAAA, and Plaintiff may establish that delivery drivers like himself were misclassified because they worked within Defendants' usual course of business.

does not, however, include on-call time where an employee is free to be where and do what they want. *Dagan v. Jewish Cmty. Housing for Elderly*, 699 N.E.2d 840, 847 (Mass. App. Ct. 1998). Employers may not contract around the minimum wage requirement. Mass. Gen. Laws ch. 151, § 20. If an employee's payment divided by their total compensable hours is less than $15 per hour, then the employer is liable under the Minimum Wage Law.

The Massachusetts Wage Act, in contrast, ensures that workers are paid their "wages earned." Mass. Gen. Laws ch. 149, § 148. Rather than set a wage floor like the Minimum Wage Law, it prohibits withholding payments from or delaying payments to employees. *See Awuah v. Coverall N. Am.*, 952 N.E.2d 890, 895 (Mass. 2011). This statute defines "wages" to include commissions "definitely determined" and vacation pay "under an oral or written agreement." Mass. Gen. Laws. Ch. 149, § 148. Courts are loath to "add language to [the Wage Act] where the Legislature itself has not done so." *Tze-Kit Mui v. Mass. Port Auth.*, 89 N.E.3d 460, 462 (Mass. 2018) (listing cases and declining to expand the meaning of wages to include sick pay). But they have strictly followed the statute's prohibition on "special contracts" that try to exempt employers from the Wage Act's requirements. *See Camara v. Att'y Gen.*, 941 N.E.2d 1118, 1122 (Mass. 2011) (noting Wage Act's purpose to protect employees' right to wages). An otherwise valid employment agreement may not reduce the wages an employee has earned. *Awuah*, 952 N.E.2d at 892. Still, the Wage Act's protections only extend to wages earned, not employment agreements about other payments. *Fraelick v. PerkettPR, Inc.*, 989 N.E.2d 517, 523–24 (Mass. App. Ct. 2013).

2.   <u>Plaintiff's Wage Act Claim</u>

Plaintiff's Wage Act claim (Count II) is premised on Defendants' failure to compensate him for business expenses such as his phone and vehicle (even though Defendants' TOS specify that the Service Fees omit expenses). But Plaintiff's claim suffers a fatal defect—it presumes that business expenses constitute wages under the Wage Act when no binding or persuasive authority supports this presumption. That is, whether or not delivery drivers were deprived of business

expenses simply has no bearing on Wage Act liability because there is no authority that stands for the proposition that business expenses constitute wages.[5]

As a matter of statutory law, the text of the Wage Act defines some benefits as "wages," but not expenses. *See* Mass. Gen. Laws 149, § 148. Plaintiff cites a single Massachusetts administrative regulation that requires employers to pay "transportation expenses" during work hours. (Dkt. No. 183 at 3) (citing 454 Mass. Code Regs. 27.04(4)(d)). But, even if this regulation could be stretched to cover all business expenses, it was passed pursuant to the Commissioner's power to set a pay floor under the Minimum Wage Law, not the Wage Act's prohibition on taking what is earned. *See* 454 Mass. Code Regs. 27.01(1). In other words, employers must pay Massachusetts employees a minimum wage that accounts for transportation expenses, but that does not mean failure to do so deprives them of "wages earned." *Cf. Escorbor v. Helping Hands Co.*, 2017 WL 4872657, slip op. at 2 (Mass. Super. 2017) (analyzing complaint for travel expenses under the Minimum Wage Law). Thus, while the Minimum Wage regulation is compatible with the Wage Act, *see Garcia v. Right at Home, Inc.*, 2016 WL 3144372, slip op. at 4 (Mass. Super. 2016), the regulation itself does not shed any light on what properly constitutes "wages earned" and whether failure to pay business expenses is a violation of the Wage Act.

As a matter of case law, the precedents to which Plaintiff cite are inapposite. His motion includes several California cases where a state statute specifically requires employers to pay business expenses. (Dkt. No. 172 at 18) (citing *O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547 (N.D. Cal. 2015), *James v. Uber Techs., Inc.*, 338 F.R.D. 123 (N.D. Cal. 2021)). But the Massachusetts precedent he cites feature *deductions* from payments that employers previously

---

[5] Although Defendants pointed this out in their briefing, (Dkt. No. 178 at 28), Plaintiff's reply was unresponsive. (*See generally* Dkt. No. 181.) In the interest of understanding the common questions and answers that may resolve this litigation, the Court ordered and received supplemental briefing as to whether the Wage Act requires employers to pay employee business expenses. (Dkt. Nos. 182, 183, 184, 185.)

agreed to, not omissions that employers like Defendants disclaimed in their TOS. (*See* Dkt. Nos. 172 at 17 n.5, 183 at 3.)[6]

The highest state authority Plaintiff cites is *Awuah*, where the Supreme Judicial Court observed that the term "earned" is not defined in the Wage Act. 952 N.E.2d at 896. In trying to define the term, the court noted that an employment agreement is relevant to what is "earned," but the statute also prohibits "special contracts." *Id.* at 896–97. The Supreme Judicial Court concluded that contractual arrangements requiring employees to pay workers' compensation and franchise fees were void as a matter of public policy. *Id.* at 899–901. Here, there is no such public policy argument, on statutory or other grounds, that agreements to use phones or vehicles are otherwise invalid.[7] In fact, in the *Awuah* litigation, claims for business equipment deductions akin to those here were rejected under the Wage Act. *Awuah v. Coverall N. Am., Inc.*, 740 F. Supp. 2d 240, 243–44 (D. Mass. 2010). Other Wage Act cases feature reimbursements that an employer expressly agreed to pay. *See Furtado v. Republic Parking Sys., LLC*, 2020 WL 996849, slip op. at 1 (D. Mass. 2020) (employment contract to reimburse travel expenses), *Fraelick*, 989 N.E.2d at 524 ("the otherwise permissible expense reimbursement arrangement . . . was *abandoned and replaced* with a policy and practice that required the employee . . . to advance, indefinitely, expenses for the employer's benefit") (emphasis added), *Serebrennikov v. Proxet*

---

[6] *See, e.g., Camara v. Att'y Gen.*, 941 N.E. 2d 1118, 1119 (Mass. 2011) (deduction from wages for damages caused by employee)*, Awuah v. Coverall N. Am., Inc.*, 952 N.E. 2d 890, 897–901 (Mass. 2011) (various deductions from "wages earned"), *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 396 (D. Mass. 2017) (deductions from pay for uniforms and damage claims), *Martins v. 3PD, Inc.*, 2013 WL 1230454, slip op. at 1 (D. Mass. 2013) ("Under Massachusetts wage law, an employer may not *deduct* certain expenses from its payment to employees") (emphasis added).

[7] Similar considerations permeate insurance cases that Plaintiff cites, which focus on the risk that employees are forced to bear on behalf of their employers without any other benefit. *See DaSilva*, 296 F. Supp. 3d at 396 (workers' compensation and cargo insurance), *Martins*, 2013 WL 1230454 at 7–8 (deductions for insurance and repair to employer vehicles). These concerns are not relevant here, either: a personal phone or vehicle has present value to the employee distinct from their engagement with Amazon Flex.

1   *Grp. LLC*, 2024 WL 1375971, slip op. at 1 (D. Mass. 2024) (citing Dkt. No. 28-1 at 1)

2   (considering business expenses incurred and unreimbursed pursuant to a "Consulting

3   Agreement").[8]

4           Plaintiff has not cited, nor has the Court identified, *any* case where a worker's contract

5   disclaimed business expenses *and* a Massachusetts court required the employer to pay them. This

6   Court is loath to take that leap in this class action litigation due to the Wage Act's language, the

7   complementary role of the Minimum Wage Law, and contrary precedent. The Wage Act protects

8   against reducing what an employer has committed to pay or shifting some employer costs against

9   public policy (like workers' compensation insurance). It does not prevent many valid

10  compensation agreements. *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145–46

11  (D. Mass. 2021) ("[t]he purpose of the Wage Act is to prevent the unreasonable detention of

12  wages, not to prescribe any particular method by which employees must be paid their earned

13  wages") (cleaned up). Therefore, it is not a violation of the Wage Act for an employer to refuse

14  compensation for generic business expenses like those alleged here.

15          Having considered the parties' supplemental briefing, the Court DISMISSES Plaintiff's

16  Wage Act claim (Count II), without prejudice, for failure to state a viable claim. *See Omar v.*

17  *Sea-Land Srv., Inc.,* 813 F.2d 986, 991 (9th Cir. 1987); *see also Wong v. Bell*, 642 F.2d 359,

18  361–62 (court may dismiss a claim *sua sponte*), 5C Charles Alan Wright & Arthur R. Miller,

19

20  [8] Plaintiff's most on-point case is an unreported trial court decision that considered claims for
    unreimbursed travel expenses, apparently in the absence of a prior agreement. *Garcia*, 2016 WL

21  3144372 at 1–4*; see also Ohio Sec. Ins. Co. v. Axis Ins. Co.*, 2017 WL 1710987, slip op. at 10
    (explaining the low weight of intermediate and trial court cases). The employee there claimed

22  expenses, citing the same Massachusetts minimum wage regulations as Plaintiffs do. *Garcia*,
    2016 WL 3144372 at 3. But plaintiff in *Garcia* brought claims for these expenses under both the

23  Wage Act *and* the Minimum Wage Law. *See id.*; *see also Garcia v. Right at Home, Inc.*, Case
    No. SUCV2015-00808, Dkt. No. 28 at 11–12 (Mass. Super. 2016) (Amended Complaint, Count

24  II). Plaintiffs here bring their claim for expenses *exclusively* under the Wage Act. (Dkt. No. 1-1
    at 9.) And the court in *Garcia* only considered the Wage Act because defendant employer argued

25  that the 27.04(4) regulations were incompatible with the Wage Act and therefore invalid. *Garcia*,
    2016 WL 3144372 at 4. Not so here. The *Garcia* court did not consider whether the Wage Act

26  alone supports a claim for business expenses under Massachusetts law.

1   Federal Practice & Procedure § 1657 (4th ed. 2013) ("the district judge on his or her own

2   initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as

3   long as the procedure employed is fair to the parties").

4         In the remaining counts, Plaintiff claims that he was misclassified (Count I) and was paid

5   less than the state minimum for the hours that he worked (Count III). As previously explained,

6   Plaintiff must prevail on Count III in order to prevail on Count I. To certify these claims for class

7   treatment, Plaintiff must meet the requirements of Rule 23.

8   **B.   Class Certification under Rule 23**

9         1.   <u>Legal Standard</u>

10        A plaintiff seeking class certification on their claim(s) must satisfy the requirements of

11  Rule 23(a) and the requirements of at least one of the categories under Rule 23(b). *Dukes*, 564

12  U.S. at 345–46. The plaintiff "bears the burden of proving by a preponderance of the evidence

13  that all requirements for class certification are met." *Byorth v. USAA Cas. Ins. Co.*, 333 F.R.D.

14  519, 525 (D. Mont. 2019).

15        Plaintiff proposes the following class: "[A]ll Amazon Flex delivery drivers who have

16  worked in the Commonwealth of Massachusetts at any time since August 23, 2014." (Dkt. No.

17  172 at 28.) Defendants argue that the inquiry necessary to establish liability to each class

18  member will be so varied and particular as to preclude certification. (Dkt. No. 178 at 17–35.)

19  Their opposition focuses on commonality and predominance. (*Id.*) In determining whether

20  Plaintiff has carried his burden for certification, the Court must conduct a "rigorous analysis" on

21  each requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). This inquiry may

22  "entail some overlap with the merits of the plaintiff's underlying claim." *Ellis v. Costco*

23  *Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). The Rule 23 requirements are necessary

24  conditions for certification; the ultimate decision is within the Court's discretion. Fed. R. Civ. P.

25  23 ("*may* sue on behalf of all members . . . *only if* . . .") (emphases added); *see also Vinole v.*

26  *Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (reviewing for abuse of

discretion).

2.    Rule 23(a) Requirements

Rule 23(a) requires a showing that (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are common questions of law or fact to the class ("commonality"); (3) the plaintiff's claims are typical of those in the class ("typicality"); and (4) the representatives will fairly and adequately protect the interests of the absent class members ("adequacy"). Fed. R. Civ. P. 23(a). These requirements are meant to protect the due process rights of plaintiffs as well as defendants to litigate their claims and defenses. *See Dukes*, 564 U.S. at 348, 367 (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

a.    *Numerosity*

Numerosity is satisfied where joinder is impracticable. Fed. R. Civ. P. 23(a)(1). While the inquiry is fact-dependent, "in general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, it is undisputed that there are thousands of Amazon Flex delivery drivers who have worked for Defendants in Massachusetts during the relevant period. (*See* Dkt. Nos. 172 at 16, 178 at 10.) Defendants' submissions confirm that fact. (*See* Dkt. No. 178-10 at 5.) Therefore, numerosity is satisfied.

b.    *Commonality*

Defendants submit, however, that the size of the class creates disparity between the factual and legal issues presented. (Dkt. No. 178 at 116–17.) Commonality under Rule 23(a)(2) requires that the claims depend upon a "common contention . . . that determination of its truth or falsity will resolve an issue that is central to the validity of *each one of the claims* in one stroke." *Dukes*, 564 U.S. at 350 (emphasis added). The key inquiry is not whether a plaintiff's claims have raised common questions, but "whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in original). It is Plaintiff's burden

1   not only to pose the questions but convince the Court that the evidence for their common

2   answers will resolve the litigation. The Court must assess the factual and legal contentions

3   presented by each claim.

4           The central question posed by Plaintiff's first claim is whether Defendants misclassified

5   Amazon Flex delivery drivers as independent contractors rather than employees. There are

6   peripheral factual questions that are common and relevant, such as whether class members are

7   employed in Massachusetts. Defendant's business records seem sufficient to answer such

8   questions. (*See* Dkt. No. 178-10 at 17.) But the primary legal answer that Plaintiff says will

9   establish liability is that delivery drivers like him are employees under prong B of the ABC test.

10  (Dkt. Nos. 172 at 16–17, 181 at 9.) In other words, drivers are employees because they work

11  within Defendants' usual course of business. Plaintiff has already put forward common evidence

12  of drivers' classification under the TOS, Defendants' course of business, as well as Defendants'

13  internal and external communications about that business. *See supra* Part I. While Defendants

14  engage in a sprawling trade that provides a host of products, that breadth does not exclude

15  delivery to end customers—the critical last-mile—from their course of business. Plaintiff

16  proposes a valid and common answer apt to resolve the misclassification claim for the class.

17  Defendants are incorrect that prong B is preempted here, *see supra* Part II(A)(1) n.4, and the

18  Court is not persuaded at this stage that delivery services are outside their usual course of

19  business. If anything, that is a common factual question on the merits of Plaintiff's

20  misclassification claim unsuitable for the class certification stage.[9]

21          But a common answer on the misclassification claim is not apt to resolve this litigation.

22  *See Dukes*, 564 U.S. at 350 Plaintiff must also establish a common contention as to his business

23  _____

24  [9] Plaintiff also argues that he can establish liability under prong A (contractual or factual
    control). (Dkt. No. 181 at 9–11.) While it appears that Defendants' individual control over

25  drivers' routes and deliveries presents highly individualized questions, *see Magalhaes v. Lowe's Home Ctrs., Inc.*, 2014 WL 907675, slip op. at 4–5 (D. Mass 2014), the common TOS may
    permit this answer, too. The Court is less convinced that there is common evidence that would

26  establish each class member's individual trade (under prong C).

expense or minimum wage claim. However, as rigorously analyzed above, his business expense claim is not cognizable under the Massachusetts Wage Act. *See supra* Part II(A)(2). The Court need not expend judicial resources, let alone certify a class, on an invalid claim. *Cf. Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (court may avoid "expenditures of time and money that must arise from litigating spurious issues"), *Dukes*, 564 U.S. at 357 (proposed common answer—that employer gave discretion to supervisors—would not establish defendant's liability for discrimination against employees).

Satisfaction of the commonality requirement thus hinges on Plaintiff's third claim. The common question there is whether delivery drivers received the Massachusetts minimum wage. It can be answered by comparing the payments drivers received with the minimum they should have received based on their total hours worked. The numerator (the pay drivers received) is not in dispute here; the denominator (the hours they worked) is. (*See* Dkt. No. 178 at 33.) Plaintiff proposes to establish total hours on a class-wide basis using Defendants' delivery records. (*See* Dkt. No. 172 at 19.) They submit that total hours worked can be calculated by the difference between when a driver picks products up and when they deliver them. (*Id.*) The trouble with this answer is that, while measurable, it assumes that each driver was working for Defendants during that entire timeframe. In order to establish liability under the Minimum Wage Law, Plaintiff must show hours when they were, in fact, working for their employer. And to satisfy the commonality requirement, Plaintiff must show that each class member worked for the employer during the proposed timeframe. Here, Plaintiff's proposed working window is too wide open.

Defendants have submitted uncontroverted evidence that drivers are permitted to make deliveries outside of their delivery blocks. (Dkt. Nos. 178-1 at 3, 179-11 at 3.) Most deliveries can be made any time before 9 P.M. (*Id.*) Therefore, an Amazon Flex driver could sign up for a three-hour block, pick up products at 9 A.M., and deliver the last at 9 P.M. without running afoul of Defendants' Quality and Standing policies. Under Plaintiff's proposed class evidence, that driver would have worked 12 hours. But Defendants have shown that the program's flexibility

1  leads to "gap time" that multiple drivers have used for their own purposes—not delivering

2  products for Defendants. (*See* Dkt. No. 178-10 at 41–51.) Plaintiff Waithaka used his gap time,

3  for example, to perform gig work for other companies like Uber. (Dkt. No. 179-1 at 25.) He was

4  not "on duty" or at a "prescribed work site" during those times. *See* 454 Mass. Code Regs. 27.02.

5  Defendants only require him to deliver packages at some point before 9 P.M. *Cf. Lawson v.*

6  *GrubHub*, 665 F. Supp. 3d 1108, 1127–30 (N.D. Cal 2023) (finding time spent "Available" to

7  employer in a given area was compensable working time). And if on-call time generally does not

8  count toward hours worked for the purposes of the Minimum Wage Law, *see Dagan*, 699 N.E.2d

9  at 847, surely time spent by an employee for other employers does not count, either.

10      Plaintiff's proposed definition of working time would also pervert delivery blocks as

11  ascribed in the TOS, to which both parties agreed. Drivers sign up for these shifts knowing the

12  estimated time it will take and the pay they will receive; Defendants pay them that amount

13  regardless of how long it takes (usually less). Plaintiff cannot now, through litigation, force that

14  window open and take advantage of the flexibility he chose. And much less through a class

15  action, where common evidence must establish common liability. Plaintiff tries to dismiss the

16  concern about gap time in a flippant footnote, saying that Defendants "cannot seriously dispute"

17  the proposed pickup-to-delivery methodology. (Dkt. No. 181 at 15.) But they do, and Plaintiff

18  does not seriously respond. (*See generally* Dkt. No. 181.) Therefore, the Court finds that pickup-

19  to-delivery does not establish liability for the "actual time it took drivers to deliver all of their

20  assigned packages," (Dkt. No. 172 at 19), and cannot form the factual basis of commonality for

21  Plaintiff's alleged minimum wage class action claim. Plaintiff offers no alternative to satisfy his

22  burden and the Court can only assume that individual methods would be necessary to assess how

23  drivers spent their gap time.

24      While Plaintiff has posed common questions of fact and law on his misclassification

25  claim, the answers these will generate nevertheless fail to resolve this litigation because there are

26  insufficient common answers on his wage claim (upon which Plaintiff's misclassification claim

1    necessarily depends). Therefore, Plaintiff has not satisfied commonality.

2              c.      *Typicality*

3          Plaintiff must also show that his claims are typical of the proposed class. Fed. R. Civ. P.

4    23(a)(3). "The test of typicality is whether other members have the same or similar injury,

5    whether the action is based on conduct not unique to the named plaintiffs, and whether other

6    class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984. The

7    commonality and typicality inquiries, which "tend to merge," both serve as "guideposts for

8    determining whether under the particular circumstances maintenance of a class action is

9    economical and whether the named plaintiff's claim and the class claims are so interrelated that

10   the interests of the class members will be fairly and adequately protected in their absence."

11   *Dukes*, 564 U.S. at 349 n.5 (internal quotation omitted). Ultimately, representative class claims

12   are typical if they are "reasonably co-extensive with those of absent class members; they need

13   not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

14         While Plaintiff's misclassification claim may be typical for delivery drivers, his

15   minimum wage claim runs into similar issues with typicality as it does commonality. It is unclear

16   how typical it is for delivery drivers to take on other gig work like Plaintiff did on some days he

17   worked for Defendants. This litigation could become bogged down in a factual morass

18   accounting for Plaintiff's working time that is not co-extensive with other class members. (*See*

19   Dkt. No. 178 at 36.) Conversely, other drivers may regularly use the time between first pickup

20   and last delivery for personal errands that Plaintiff does not. Though it poses a lower barrier to

21   certification than that of commonality, the Court also expresses reservations about the typicality

22   of Plaintiff's claims.

23              d.      *Adequacy of Representation*

24         Finally, Rule 23(a)(4) requires that the named plaintiff and class counsel "fairly and

25   adequately" protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To determine whether said

26   individuals will adequately represent a class, the Court must examine (1) whether the named

1    plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether

2    the named plaintiff and his counsel will prosecute the action vigorously on behalf of the class.

3    *Ellis*, 657 F.3d at 985.

4         The Court is less concerned here about Plaintiff's or their counsel's representation of

5    other delivery drivers. No conflicts of interest have been raised and counsel has sufficient

6    expertise with class actions to prosecute the claims. (*See* Dkt. No. 172-2 at 3–5.) Defendants

7    raise credibility issues with named Plaintiff, (Dkt. No. 178 at 36), but these are not as relevant to

8    his prosecution of this case. Therefore, the Court finds that Plaintiff would be an adequate class

9    representative.

10        3.    Rule 23(b)(3) Requirements

11        Plaintiff seeks certification under Rule 23(b)(3), (*see* Dkt. No. 172 at 11), which requires

12   the Court to additionally find that the common questions of law or fact "predominate over any

13   questions affecting only individual members" and that the proposed class action "is superior to

14   other available methods." Fed. R. Civ. P. 23(b)(3). These requirements promote sound judicial

15   administration by assessing the efficiency and manageability of the litigation.

16        a.    *Predominance*

17        In addition to the problems Plaintiff encounters under Rule 23(a), Plaintiff has issues

18   satisfying the conditions of Rule 23(b)(3). Certification under Rule 23(b)(3) is only appropriate

19   "whenever the actual interests of the parties can be served best by settling their differences in a

20   single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller &

21   Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

22        With these additional interests at stake, predominance is a more stringent standard than

23   commonality. The predominance inquiry "tests whether proposed classes are sufficiently

24   cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

25   591, 623 (1997). This inquiry presumes the existence of common factual or legal issues and

26   instead "focuses on the relationship between the common and individual issues." *Hanlon*, 150

F.3d at 1023. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* Litigation that depends on individual testimony to establish individual liability is unlikely appropriate for class-wide resolution. *See Bowerman v. Field Asset Srvs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023).

The common misclassification issues here on Count I are susceptible to classwide resolution. Individual issues under prongs A and C of the ABC test are unlikely to be disputed. Plaintiff has clearly indicated his preference to litigate on prong B, which other courts have found amenable to class treatment because the common evidence pertains to a single defendant employer rather than numerous plaintiff employees. *See, e.g., Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059–60 (7th Cir. 2016). Here, Defendants employ all Amazon Flex delivery drivers in Massachusetts under TOS common for the purposes of this litigation. (*See, e.g.,* Dkt. Nos. 178-1 at 7, 179-14 at 3, 179-16). Therefore, the few individual issues are insignificant compared to the common issue: whether the relevant deliveries are within Defendants' usual course of business.

The commonality issues with Plaintiff's business expense and minimum wage claims, on the other hand, are compounded by the predominance requirement. Even assuming that Plaintiff has an actionable Wage Act claim for his phone and vehicle (he does not, *see supra* Part II(A)(2)), individual issues predominate on Count II. For one, the amount each class member used their phone or vehicle at work will vary because of the drivers' flexibility to do what they want and go where they please during gap times. For another, the variety of possible makes, models, and vintages across both phones and vehicles is substantial under Defendants' minimal requirements. (*See* Dkt. Nos. 172-14 at 11, 178-10 at 30–33.) Defendants have the right to contest liability as to each class member, which would lead to potentially thousands of mini-trials on liability and damages. *See Bowerman*, 60 F.4th at 470.

On Count III, the gap time issue raises individual questions as to liability for minimum wages. Each of the thousands of class members could have worked for other companies between

the time they first picked up packages and last delivered them. That poses thousands of different questions, each one of which would diminish some or all of Defendants' liability. And each may significantly delay the valid claims of other class members. As a matter of sound judicial administration, the Court is not inclined to certify such an incohesive class. And Rule 23 does not permit it. "In light of the complexity of the individualized questions and the absence of any representative evidence introduced to fill the class members' evidentiary gap, the individual issues predominate over the common questions in this case." *Bowerman*, 60 F.4th at 471.

b.    *Superiority*

Finally, Rule 23(b)(3) requires the Court to find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). This analysis must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.*

As the foregoing analysis lays bare, Plaintiff has proposed a class that is neither fair to litigants nor efficient for the Court. While he may prefer class-wide litigation, it is not only his rights the Court must consider. Defendants' right to litigate their defenses could be unfairly hindered by lumping drivers together who took advantage of the program's flexibility in a variety of ways. Otherwise, the Court would be forced to consider an unmanageable amount of evidence on each potential class member. Therefore, the Court finds that the class proposed here is not a superior method for litigation.

1

**III. CONCLUSION**

2

Plaintiff's proposed class does not meet the commonality, predominance, and superiority

3

requirements of Rule 23. For the foregoing reasons, the Court DENIES Plaintiffs' motion for

4

class certification (Dkt. No. 172) and DISMISSES Plaintiff's Wage Act claim (Count II) without

5

prejudice.

6

7

DATED this 31st day of December 2024.

8

9

10

John C. Coughenour
UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
C19-1320-JCC
PAGE - 20